COURT OF 
APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-355-CR
 
 
JEFFERY 
SCOTT DAVIS                                                         APPELLANT
 
V.
 
THE 
STATE OF TEXAS                                                                  STATE
 
 
------------
 
FROM 
THE 97TH DISTRICT COURT OF MONTAGUE COUNTY
 
------------
 
OPINION*
 
------------
        A 
jury convicted Appellant Jeffery Scott Davis of the manufacture of more than 400 
grams of methamphetamine and assessed punishment at fifty years’ confinement 
and a $100,000 fine. The trial court sentenced him accordingly. In one issue, 
Appellant challenges the trial court’s denial of his motion to suppress the 
fruits of the search warrant subject to which the contraband was seized. Because 
we hold that the trial court abused its discretion in denying Appellant’s 
motion to suppress, we reverse the trial court’s judgment.
Background 
Facts
        We 
set out in whole the affidavit in question, submitted to the magistrate by 
Officer John Spragins of the Wichita Falls, Texas police department:
CASE 
# TF-03-0081                                                         
WARRANT (DA) #
 
AFFIDAVIT FOR SEARCH AND ARREST WARRANT
 
THE STATE OF TEXAS                                                   
COUNTY OF 
MONTAGUE
 
The 
undersigned Affiant, being a Peace Officer under the laws of the State of Texas 
and being duly sworn, on oath makes the following statement and accusations:
  
1. 
There is in MONTAGUE County, Texas, a suspected place and premises described and 
located as follows: A single family mobile home 
that is know as 701 Young Street, Nocona, Montague County, Texas. Said residence 
is grey in color with white trim. S[ai]d residence is located on the west side 
of the roadway and the front door faces east.
 
Said suspected place and premises, in addition to the foregoing description, also 
includes all other buildings, structures, places, vehicles on said premises and 
within the curtilage, if said is a residence, that are found to be under the 
control of the suspected party named below and in, on, or around which said 
suspected party may reasonably reposit or secrete property that is the object of 
the search requested herein.
 
2. 
There is at said suspected place and premises property concealed and kept in 
violation of the laws of the State of Texas and described as follows: drugs kept, prepared, or manufactured in violation of 
the laws of this state, to-wit, Methamphetamine. Further, Affiant believes that 
suspected party has at said suspected place other paraphernalia, implements, and 
instruments used in the commission of the offense of Manufacture and 
Distribution of Methamphetamine.
 
3. Said 
suspected place and premises are in charge of and controlled by each of the 
following persons: Jeffery Scott Davis, white 
male, DOB 01-22-76[.]
 
4. 
It is the belief of Affiant, and he hereby charges and accuses, that: Jeffery Scott Davis is intentionally and knowingly in 
unlawful possession of a controlled substance listed in the Texas Health and 
Safety Code, to wit, Methamphetamine.
 
5. 
Affiant has probable cause for said belief by reason of the following facts: Your Affiant is a Texas commissioned Peace Officer and 
has been so commissioned for over 10 years. Your Affiant is employed by the 
Wichita Falls Police Department and assigned, as a Narcotics Investigator, to 
the North Texas Regional Drug Enforcement Task Force. During the time your 
Affiant has been assigned as a Narcotics Investigator, your Affiant has been 
responsible for several investigations of controlled substances violations 
including the Manufacture and Distribution of Methamphetamine. In addition, your 
Affiant has attended training in narcotics investigations including search 
warrant preparation, evidence collection and investigations of individuals who 
derive substantial income from the illegal importation, manufacture, 
distribution, and sale of illegal controlled substances. Your Affiant has also 
attended basic and advanced training in clandestine laboratories and is 
certified by the Drug Enforcement Administration to enter and seize clandestine 
drug manufacturing laboratories.
  
Your Affiant, along with Task Force investigators and 
DPS Investigators, ha[s] been conducting a joint investigation regarding Jeffery 
Scott Davis[‘s] involvement in the Manufacture and Distribution of 
Methamphetamine. During this investigation investigators have gathered 
information that Davis was manufacturing methamphetamine at 701 Young Street, 
Nocona, Texas. Investigators have received information from confidential 
informants that stated Davis was manufacturing the methamphetamine inside the 
residence as well as in a shed located in the backyard of said residence. 
Investigators have received information that Davis was purchasing items used in 
the manufacture of methamphetamine including starter fluid (ether) and coffee 
filters. Investigators have received information from Crime Stoppers that 
described a chemical odor emitting from the residence at 701 Young Street and 
that Davis was manufacturing methamphetamine at the residence.
  
On 03-18-03, at approximately 0400 hrs, Officer 
Mitchell Westervelt was on patrol in Nocona and drove past residence. Westervelt 
stated that he could smell a strong chemical odor he has associated with the 
manufacture of methamphetamine emitting from the residence at 701 Young Street. 
Westervelt informed Chief Holcomb of the odor and Holcomb contacted your 
Affiant.
  
Based on the information received from numerous 
sources and the odor emitting from the residence, your Affiant firmly believes 
that Jeffery Scott Davis is intentionally and knowingly in possession of a 
quantity of methamphetamine at the above listed location.
 
Further, based on your Affiant’s experience as an 
Investigator, it is known that drug dealers normally keep certain records 
indicating drug quantities handled, cost, prices, names and telephone number of 
buyers and suppliers as well as information regarding bank accounts. It can also 
be presumed that these and other records indicating premise occupancy/residence 
will be found on the said property. Your Affiant further alleges that weapons 
found on the said property are seizable as indicative of drug dealings since 
possession of a firearm tends to 
demonstrate a likelihood that the dealer took steps to prevent contraband, 
paraphernalia and the proceeds (money) from being stolen, similarly as other 
tools of the trade (scales, plastic baggies, cutting equipment and narcotics 
equipment) which are also seizable would be kept. Further, your Affiant alleges the above constitute 
specific articulable facts from which a reasonable person could draw [a] 
rational inference that large sums of cash found at the premise (absent proof to 
the contrary) were derived from illegal narcotics sales and therefore subject to 
seizure.
 
In 
response to this affidavit, the magistrate issued a combination arrest and 
search warrant for Appellant at the Young Street address.
        Officer 
Spragins, the affiant, is a police officer assigned as a narcotics investigator 
to the North Texas Regional Drug Enforcement Task Force. Consequently, as his 
affidavit points out, he received specialized training in narcotics 
investigations, search warrant preparation, evidence collection, and 
investigations of individuals in the illegal drug trade. Spragins also attended 
“basic and advanced training in clandestine laboratories and is certified by 
the Drug Enforcement Administration to enter and seize clandestine drug 
manufacturing laboratories.”
        Spragins, 
task force investigators, and DPS investigators had been conducting a joint 
investigation of Appellant. According to Spragins’s affidavit, during the 
investigation the investigators gathered information that Appellant was 
manufacturing methamphetamine at 701 Young Street in Nocona, Texas. Spragins 
stated in the affidavit that
   
[i]nvestigators have received information from confidential informants that 
stated Davis was manufacturing the methamphetamine inside the residence as well 
as in a shed located in the backyard of said residence. Investigators have 
received information that Davis was purchasing items used in the manufacture of 
methamphetamine including starter fluid (ether) and coffee filters. 
Investigators have received information from Crime Stoppers that described a 
chemical odor emitting from the residence at 701 Young Street and that Davis was 
manufacturing methamphetamine at the residence.
 
        In 
one issue, Appellant argues that the trial court erred by denying his motion to 
suppress because, within the four corners of the affidavit, there were not 
specific, credible facts to allow a magistrate to determine that the information 
in the affidavit was reliable enough to provide a substantial basis for the 
magistrate’s conclusion that an offense had been committed and that contraband 
would probably be found at the residence at 701 Young Street in Nocona. The 
State concedes that “the background information in the warrant supplied by 
Spragins was conclusory and failed to provide enough detail to alone provide 
probable cause for the search.” The State argues, however, that this warrant 
is a “‘smell’ warrant which was never intended to . . . rise or fall upon 
the corroborating facts stated in the affidavit.” Instead, the State argues 
that the critical information is contained in the portion of the affidavit that 
states,
  
On 03-18-03, at approximately 0400hrs, Officer Mitchell Westervelt was on patrol 
in Nocona and drove past residence. Westervelt stated that he could smell a 
strong chemical odor he has associated with the manufacture of methamphetamine 
emitting from the residence at 701 Young Street. Westervelt informed Chief 
Holcomb of the odor and Holcomb contacted your Affiant.

Standard of 
Review
        The 
State argues that the affidavit in this case “rests or falls upon the adequacy 
of the information supplied to Investigator Spragins by Officer Westervelt.” 
As Appellant points out, this court has explained that if an affiant is seeking 
a search warrant, the evidence will be considered evidence of a persuasive 
character in obtaining a warrant when the magistrate finds the affiant qualified 
to recognize the odor of the contraband.[1]
        A 
search warrant must be based upon probable cause.[2]  
Under the Fourth Amendment, an affidavit is sufficient to establish probable 
cause if, from the totality of the circumstances reflected in the affidavit, the 
magistrate was provided with a substantial basis for concluding that probable 
cause existed.[3]  Probable cause sufficient to 
support a search warrant exists if the facts contained within the four corners 
of the affidavit and the reasonable inferences drawn therefrom justify the 
magistrate's conclusion that the object of the search is probably on the 
premises at the time of issuance.[4]  No magical 
formula exists for stating such information.[5]  
In ascertaining whether a search warrant is based on probable cause, the 
affidavit is interpreted in a common-sense, realistic manner, and the magistrate 
is entitled to draw reasonable inferences from the facts contained therein.[6]  The magistrate's determination of probable cause is 
given great deference by the reviewing court.[7]
        In 
this review, we are to determine whether there is a fair probability, not an 
actual showing, that contraband or evidence of a crime will be found in a 
particular place in light of the totality of the facts set forth in the 
affidavit.[8]  The officer's affidavit must 
provide the magistrate with a substantial basis for concluding that a search 
would uncover evidence of wrongdoing.[9]  The 
informant's reliability and basis of knowledge are relevant in determining the 
value of his assertions.[10]  Corroboration of 
the details of an informant's tip through independent police investigation can 
also be relevant in the magistrate's determination of probable cause.[11]  Likewise, the affidavit should set forth the 
foundation for the officer's belief in an informant's credibility and veracity.[12]  However, “a deficiency in one may be compensated 
. . . by a strong showing as to the other, or by some other indicia of 
reliability,” all of which are relevant considerations under the totality of 
the circumstances.[13]  As a reviewing court, we 
are to ensure that the magistrate had a substantial basis for concluding that 
probable cause exists.[14]
Analysis of 
Spragins’s Affidavit
        Although 
Spragins states in his affidavit that investigators had received information 
from confidential informants that stated Davis was manufacturing the 
methamphetamine inside the residence as well as in a shed located in the 
backyard of said residence and that Davis was purchasing items used in the 
manufacture of methamphetamine including starter fluid (ether) and coffee 
filters, the affidavit provides no indication of a date or time frame for either 
the investigation or the tips.  Nor does the affidavit provide any 
suggestion that the information came from reliable sources or any hint of what 
the basis of their information might be. The affidavit does not show that 
Spragins ever verified that Appellant lived at the Young Street address or had 
ever been present at the Young Street address.
        Spragins 
also avers that investigators had received information from Crime Stoppers that 
described a chemical odor emitting from the residence, but again, there is no 
mention of a time frame, nor is there a description of the chemical odor or any 
information that could tend to connect the chemical odor to the manufacture of 
drugs.
        Spragins 
states in the affidavit that Chief Holcomb contacted him with the information 
that Westervelt had smelled an odor he associated with the manufacture of 
methamphetamine on the day the warrant was issued. Nowhere in the affidavit, 
however, is there any explanation of Westervelt’s expertise or experience in 
recognizing an odor associated with the manufacture of methamphetamine. There is 
no description of Westervelt’s training or experience in general as a peace 
officer or specifically in connection with drugs. There is no information 
regarding the number of times Westervelt had smelled an odor he “associated 
with the manufacture of methamphetamine“ or whether Westervelt was correct in 
associating the odor with the manufacture of methamphetamine.  Indeed, 
Spragins could not recall Westervelt’s name at the suppression hearing; he 
recalled only that Westervelt was a Nocona police officer.  There is no 
evidence in the affidavit that Spragins had any knowledge of Westervelt’s 
experience or expertise or that Westervelt was part of the task force or 
investigation team.
        There 
is also no evidence explaining why Westervelt believed the odor emanated from 
the specific Young Street address in question.  There is no evidence 
describing the circumstances under which he smelled the odor.  Did he 
remain in his car in the street?  Did he pull into the driveway?  The 
affidavit does not tell us.  There is no evidence in the affidavit that 
Spragins himself ever went to Appellant’s residence before swearing to the 
affidavit, had any personal knowledge of any activities occurring at the 
residence, or verified Westervelt’s observations.  Similarly, there is no 
indication that anyone from the task force or the joint investigation team went 
to Appellant’s residence, had personal knowledge of activities occurring at 
the residence, or verified Westervelt’s observations.  Although the State 
is correct that the veracity of the officer providing information to the affiant 
is presumed if it is unchallenged, expertise is not presumed.
        The 
dissent argues that in order to give a “common sense and reasonable 
interpretation” of the statement that Westervelt smelled a strong chemical 
odor that he “has associated . . . with the manufacture of methamphetamine,” 
we must add to the affidavit information that is contained nowhere in it.  
The dissent adds to the four corners of the affidavit that Westervelt “had 
enough experience and expertise that he had previously smelled the same chemical 
odor and had previously associated it with the manufacture of 
methamphetamine.”
        We 
are not permitted to create from whole cloth facts not contained within the four 
corners of the affidavit. Therefore, we do not know that Westevelt had any 
experience as a police officer.  From the affidavit, we do not know whether 
this was his first day as a peace officer or whether he had many years’ 
experience. The dissent claims Westervelt had previously smelled the same odor 
and had previously associated it with the manufacture of methamphetamine. Again, 
this is not what the affidavit says. Nowhere does the affidavit say that 
Westervelt has previously smelled a chemical odor that actually was associated 
with the manufacture of methamphetamine. An objective reading of the affidavit 
reveals that on the morning in question, Westervelt smelled a strong chemical 
odor and has associated it with the manufacture of methamphetamine. The 
affidavit does not say that he ever smelled either the odor or methamphetamine 
in the past, and it does not say that he correctly associated the odor with the 
manufacture of methamphetamine in the past.
        The 
dissent also tries to use Spragins’s demonstrated experience and professional 
knowledge to minimize the absence of such information about Westervelt and the 
absence of any evidence that Spragins verified any evidence in the affidavit. 
With all respect to the dissent’s position, it does not matter how many 
years’ experience Spragins had, how many drug task forces he is a member of, 
how many narcotics investigation training schools he has attended, or how many 
certifications he has. The affidavit provides no evidence that Spragins ever 
went to the location, smelled the odor there, or verified any information. 
Spragins refers to a Crime Stoppers tip, but there is no indication that he ever 
verified it. He mentions that other investigators obtained information from 
confidential informants, but again, there is no evidence in the affidavit that 
he ever verified the information, and the affidavit does not show the 
reliability of the informants or the source of their information, nor does 
Spragins state other than generally the specific information they provided. 
Equally important, Spragins provides us no time frame for the Crime Stoppers tip 
or the Crime Stoppers observation, the date other investigators received 
information from the informants, the date the informants observed the activity 
they reported, or the timing of any investigative activity on his part or that 
of the task force. The only date we are provided is that of Westervelt’s 
drive-by.
        Our 
sister court in Houston has explained,
  
To justify a magistrate's finding that an affidavit is sufficient to establish 
probable cause to issue a search warrant, the facts set out in the affidavit 
must not have become stale when the magistrate issues the search warrant.  
Probable cause ceases to exist when, at the time the search warrant is issued, 
it would be unreasonable to presume the items remain at the suspected place.
 
The 
proper method to determine whether the facts supporting a search warrant have 
become stale is to examine, in light of the type of criminal activity involved, 
the time elapsing between the occurrence of the events set out in the affidavit 
and the time the search warrant was issued.  When the affidavit recites 
facts indicating activity of a protracted and continuous nature, i.e., a course 
of conduct, the passage of time becomes less significant.[15]
 
        The 
dissent apparently places importance on the fact that Spragins “swore that he 
firmly believed Appellant was intentionally and knowingly in possession of a 
quantity of methamphetamine at his residence.”  Yet, again, the affidavit 
provides no evidence that Spragins ever confirmed that Appellant was connected 
in any way to the Young Street address.
        The 
case now before this court is in many ways similar to Lowery v. State.[16]  In Lowery, multiple informants provided 
information, but the affidavit in support of the warrant did not detail the 
reasons they were reliable or the source of their information.  As the Lowery 
court explained, “Probable cause does not arise by virtue of the fact that 
several people, whose identity, reliability, credibility, or basis of knowledge 
is unestablished, gave officers information concerning criminal activity.”[17]
        While 
information from an unnamed informant alone does not establish probable cause, 
the informant's tip combined with independent police investigation may provide a 
substantial basis for the probable-cause finding.[18]  
In the case before us, even the unnamed informants’ information combined with 
Westervelt’s observations do not create circumstances sufficient to provide 
probable cause necessary to justify the warrant.  In Lowery,
  
The “critical tipster” also stated that he had been in the house within 
forty-eight hours and had observed persons in the house who, in his opinion, 
were under the influence of amphetamines.  The affidavit, however, gives no 
basis in the informant's experience to lead the magistrate to accept this 
assessment.  Further, the affidavit provides no details concerning the 
critical informant's knowledge that a female goes to the house to exchange sex 
for narcotics or his basis of personal experience that the house has been used 
for dealing narcotics for the past several years.  Without such 
information, the informant's statements fail to give rise to probable cause.[19]
 
        In 
Lowery, the State argued, as does the dissent in the case now before this 
court, that the individual details in the affidavit, taken as a whole, reveal a 
substantial basis for the magistrate to justifiably infer probable possession of 
the illegal drug.  In Lowery, the State specifically argued that 
there was probable cause because: (1) several informants told Officer Crawford 
that there was a drug lab located in an underground house where Lowery lived; 
(2) subsequent investigation showed Lowery's address to be 911 Camellia Drive 
and corroborated that the house had underground rooms; (3) Officer Crawford said 
that Patton, Lowery’s roommate who allegedly brought in supplies for the lab, 
drove a black Mercedes, and the affiant regularly observed a black Mercedes 
parked at the house over a two-month period; (4) a reliable informant reported 
hearing about an amphetamine lab on Camellia Drive; and (5) a relative of a drug 
purchaser (the untested informant) heard about the presence of amphetamines 
inside the house at 911 Camellia Drive.[20]  The 
Lowery court, however, rejected these arguments, pointing out, 
”hearsay-upon-hearsay may be utilized to show probable cause if the underlying 
circumstances indicate a substantial basis for crediting the hearsay at each 
level.”[21]
        As 
does the dissent in the case now before this court, the State in Lowery 
also argued that the affidavit, taken as a whole, revealed a substantial basis 
for the magistrate to justifiably infer the alleged perpetrators possession of 
illegal drugs. The Lowery analysis addressed further argument by the 
dissent in the present case:
  
Corroboration of the details of an informant's tip by independent police work is 
another relevant consideration in the totality-of-the-circumstances analysis. An 
informant's tip combined with independent corroboration by police investigation 
may provide a substantial basis for the magistrate's finding of probable cause.[22]
  
We 
find no case holding that probable cause existed absent any showing of the 
informant's reliability, credibility, or basis of knowledge without independent 
police corroboration of facts giving rise to probable cause.  Absent 
independent police corroboration of the reported criminal activity, there must 
be some reasonable basis for crediting the information contained in the 
affidavit.  Here, officers did not independently corroborate any facts 
supporting a reasonable belief that amphetamine was located at 911 Camellia 
Drive. Thus, even if the facts provided to officers by informants, taken as a 
whole, would be sufficient to establish probable cause, the affidavit still must 
contain information that would allow the magistrate independently to determine 
the credibility, reliability, or basis of knowledge of the sources of those 
facts.[23]
   
        As 
the State concedes, the affidavit in this case “rests or falls upon the 
adequacy of the information supplied to Investigator Spragins by Officer 
Westervelt.” Because the affidavit is silent as to Westervelt’s experience, 
his proximity to the residence at 701 Young Street other than the fact that he 
“drove past” the residence, the length of time he spent outside the 
residence, or anything else that would show the reliability of his suspicion, 
the affidavit is insufficient to support the warrant.[24]
Conclusion
        Under 
the standard of review given above, the trial court abused its discretion in 
denying Appellant’s motion to suppress. We therefore sustain Appellant’s 
sole issue, reverse the judgment of the trial court, and remand this cause to 
the trial court for a new trial without the evidence that should have been 
suppressed.
   
                                                                  LEE 
ANN DAUPHINOT
                                                                  JUSTICE
   
  
PANEL 
B:   DAUPHINOT, HOLMAN, and WALKER, JJ.
 
WALKER, 
J., filed a dissenting opinion.
 
PUBLISH
 
DELIVERED: 
March 24, 2005

 

 
COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
  
NO. 2-04-355-CR
  
  
JEFFERY 
SCOTT DAVIS                                                         APPELLANT
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
  
  
------------
 
FROM 
THE 97TH DISTRICT COURT OF MONTAGUE COUNTY
 
------------
 
DISSENTING OPINION
 
------------
        I 
respectfully dissent. I would hold that, based on Officer Spragins’s probable 
cause affidavit, the magistrate had a substantial basis for concluding that the 
search warrant would uncover evidence of wrongdoing, specifically evidence of 
possession and manufacture of methamphetamine, and that, therefore, the trial 
court properly denied Appellant Jeffery Scott Davis’s motion to 
suppress.  Accordingly, I would overrule Appellant’s issue and affirm the 
trial court’s judgment.
        A 
distinction exists between the standards of review applicable to warrantless 
searches and searches pursuant to a search warrant.  Swearingen v. State, 
143 S.W.3d 808, 811 (Tex. Crim. App. 2004).  The standard of review to be 
applied to the review of a magistrate’s determination of probable cause in 
issuing a search warrant is the deferential standard of review articulated in Illinois 
v. Gates[1] and in Johnson v. State.[2]  Swearingen, 143 S.W.3d at 811 (instructing 
appellate courts to apply the “deferential standard of review articulated in Gates 
and Johnson” in reviewing a magistrate’s decision to issue a 
warrant).
        The 
deferential standard of review was articulated in Gates as follows:
  
we reaffirm the totality-of-the-circumstances analysis that traditionally has 
informed probable-cause determinations.  The task of the issuing magistrate 
is simply to make a practical, common-sense decision whether, given all the 
circumstances set forth in the affidavit before him, including the 
“veracity” and “basis of knowledge” of persons supplying hearsay 
information, there is a fair probability that contraband or evidence of a crime 
will be found in a particular place.  And the duty of a reviewing court is 
simply to ensure that the magistrate had a “substantial basis for. . . 
conclud[ing]” that probable cause existed.
  
462 
U.S. at 238-39, 103 S. Ct. at 2332 (citations omitted). In Johnson, the 
standard was articulated as follows:
  
Appellate court review of the sufficiency of an affidavit is not a de novo 
review.  The magistrate's determination of probable cause should be given 
great deference by the reviewing court.  “[T]he traditional standard for 
review of an issuing magistrate's probable cause determination has been that so 
long as the magistrate had a 'substantial basis for ... conclud[ing]' that a 
search would uncover evidence of wrongdoing, the Fourth Amendment requires no 
more.”
 
803 
S.W.2d at 289 (citations omitted).
        The 
sufficiency of a search warrant affidavit is determined by considering the 
totality of the circumstances set forth in the affidavit.  Gates, 
462 U.S. at 238, 103 S. Ct. at 2332.  The affidavit must be interpreted in 
a common sense and realistic manner, and reasonable inferences may be drawn from 
the facts and circumstances within the four corners of the affidavit.  Jones 
v. State, 833 S.W.2d 118, 123-24 (Tex. Crim. App. 1992), cert. denied, 
507 U.S. 921 (1993).
        The 
majority’s thoughtful analysis is flawed, in my view, because the majority 
does not interpret the affidavit in a common sense and realistic manner and does 
not defer to reasonable inferences that may be drawn from the facts and 
circumstances within the four corners of the affidavit. Instead, in my opinion, 
the majority dissects the affidavit in a hypertechnical way, at odds with the 
required standard of review, instead of focusing on the totality of the 
circumstances set forth in the affidavit.
        The 
majority holds that the affidavit is silent as to Westervelt’s experience, his 
proximity to the residence, the length of time he spent outside the residence, 
or anything else that would show the reliability of Officer Westervelt’s 
suspicion.  Accordingly, the majority holds that the affidavit is 
insufficient to support the warrant.  The affidavit states, however,
   
On 3-18-03, at approximately 0400 hrs, Officer Mitchell Westervelt was on patrol 
in Nocona and drove past [the] residence.  Westervelt stated that he could 
smell a strong chemical odor he has associated with the manufacture of 
methamphetamine emitting from the residence at 701 Young Street.  
Westervelt informed Chief Holcomb of the odor and Holcomb contacted your 
Affiant.
 
 
        The 
majority concedes that the magistrate was entitled to rely upon this information 
as reliable[3] but claims the affidavit does not set 
forth information establishing Westervelt’s expertise or experience in 
recognizing an odor associated with the manufacture of methamphetamine.  
The affidavit indicates that Westervelt is a police officer, that on March 18th 
he personally smelled a strong chemical odor emitting from Appellant’s 
residence, and that he “has 
associated”[4]  that smell “with the 
manufacture of methamphetamine.”  A common sense and reasonable 
interpretation of this statement demonstrates that Westervelt, a police officer, 
has enough experience and expertise that he has previously smelled the same 
chemical odor and “has associated” it previously with the manufacture of 
methamphetamine.  See Gish v. State, 606 S.W.2d 883, 886 (Tex. Crim. 
App. 1980) (officer affiant did not detail his expertise in recognizing smell of 
ether; affidavit simply stated that he smelled it and that it was associated 
with manufacture of methamphetamine).  I cannot agree with the majority 
that a police officer who has had the experience of previously smelling the 
strong chemical odor associated with the manufacture of methamphetamine must say 
more than this to establish his expertise and ability to recognize the same 
smell when he smells it again.  Nor can I agree with the majority that 
Officer Westervelt needed to explain why he believed the odor emanated 
from Appellant’s residence—the why is because he smelled it coming from that 
location.  Such a holding fails to interpret the affidavit in a common 
sense and realistic manner and fails to permit reasonable inferences from the 
facts and circumstances within the four corners of the affidavit.  See 
Jones, 833 S.W.2d at 123-24.
        Looking 
to the totality of the circumstances presented in Spragins’s affidavit and 
giving great deference to the magistrate’s probable cause determination, I 
would hold that the magistrate had a substantial basis for concluding that a 
search would uncover evidence of wrongdoing. Officer Spragins is a ten-year 
police veteran.  He is a Narcotics Investigator assigned to the North Texas 
Regional Drug Enforcement Task Force.  He has attended training in 
narcotics investigations, including the manufacture of controlled substances, 
and is certified by the Drug Enforcement Agency to enter and seize clandestine 
drug manufacturing laboratories.  As a Narcotics Task Force Investigator, 
he, along with other investigators, “have been conducting” an investigation 
regarding Davis’s manufacture and distribution of methamphetamine; that is, 
they were currently involved in the investigation.  “During this 
investigation investigators have gathered information that Davis was 
manufacturing methamphetamine at 701 Young Street, Nocona, Texas.”[5]  Investigators obtained additional data from 
confidential informants who said Appellant was manufacturing methamphetamine 
inside a shed in his backyard, from Crime Stoppers who told police Appellant was 
manufacturing methamphetamine at his house and described a chemical odor 
emitting from Appellant’s residence, and from Appellant’s purchase of 
starter fluid and coffee filters, items used in the manufacture of 
methamphetamine.  Officer Westervelt smelled a strong chemical odor he has 
associated with the production of methamphetamine coming from Appellant’s 
residence on March 18, 2003, and “[b]ased on the information received from 
numerous sources and the odor emitting from the residence,” Officer Spragins 
swore that he firmly believed Appellant was intentionally and knowingly in 
possession of a quantity of methamphetamine at his residence. Spragins obtained 
the search warrant that day, March 18, 2003, authorizing him to search 
Appellant’s residence and outbuildings at 701 Young Street for methamphetamine 
and evidence of its manufacture.[6]
        Giving 
great deference to the magistrate’s determination of probable cause, Officer 
Spragins’s affidavit sets forth a substantial basis for the magistrate’s 
conclusion that a search would uncover evidence of wrongdoing, specifically 
possession or manufacture of methamphetamine.[7]  
I would overrule Appellant’s issue and affirm the trial court’s judgment.
  
  
                                                          SUE 
WALKER
                                                          JUSTICE
 
 
DELIVERED: 
March 24, 2005

 
NOTES
*  
Majority Opinion by Justice Dauphinot; Dissenting Opinion by Justice Walker
 
Majority Opinion Notes
1.  
Wynn v. State, 996 S.W.2d 324, 327 (Tex. App.—Fort Worth 1999, no 
pet.).
2.  
U.S. CONST. amend. IV; TEX. CONST. art. I, § 9; Tex. Code Crim. Proc. Ann. art. 18.01(b) 
(Vernon Supp. 2004-05); Jones v. State, 833 S.W.2d 118, 123 (Tex. Crim. 
App.) cert. denied, 507 U.S. 921 (1993); cf. Cates v. State, 120 
S.W.3d 352, 355 n.3 (Tex. Crim. App. 2003) (setting forth the distinction 
between a suppression hearing and a Franks hearing where additional 
evidence may be admitted to show the falsity of assertions within an affidavit).
3.  
Illinois v. Gates, 462 U.S. 213, 238-39, 103 S. Ct. 2317, 2332-33 (1983); 
see U.S. CONST. amend. IV.
4.  
Cassias v. State, 719 S.W.2d 585, 587-88 (Tex. Crim. App. 1986) (op. on 
reh'g).
5.  
Frazier v. State, 480 S.W.2d 375, 379 (Tex. Crim. App. 1972).
6.  
Ellis v. State, 722 S.W.2d 192, 196 (Tex. App.—Dallas 1986, no pet.).
7.  
Gates, 462 U.S. at 236, 103 S. Ct. at 2331; Swearingen v. State, 
143 S.W.3d 808, 811 (Tex. Crim. App. 2004).
8.  
Gates, 462 U.S. at 238, 103 S. Ct. at 2332; Hennessy v. State, 660 
S.W.2d 87, 89 (Tex. Crim. App. 1983) (holding that the informant's basis of 
knowledge, or reliability, along with his veracity, or credibility, are relevant 
considerations in the totality of the circumstances, citing Gates).
9.  
Gates, 462 U.S. at 236, 103 S. Ct. at 2331; Swearingen, 143 S.W.3d 
at 809-10.
10.  
Gates, 462 U.S. at 230, 103 S. Ct. at 2328.
11.  
Id. at 241-42, 103 S. Ct. at 2333-34.
12.  
Id. at 229, 103 S. Ct. at 2327-28.
13.  
Id. at 233, 103 S. Ct. at 2329.
14.  
Id. at 236, 103 S. Ct. at 2331; see Bower v. State, 769 S.W.2d 
887, 902 (Tex. Crim. App.) (holding we do not conduct a de novo review but look 
to the evidence as a whole and determine whether there is substantial evidence 
to support the magistrate's decision), cert. denied, 492 U.S. 927 (1989), 
overruled on other grounds, Heitman v. State, 815 S.W.2d 681, 685 
n.6 (Tex. Crim. App. 1991); see also Cates, 120 S.W.3d at 355 n.3 
(recognizing that before a Franks hearing may be held, defendant must 
make a substantial preliminary showing of falsity in the “four corners” of 
the probable cause affidavit).
        The 
foregoing discussion of the law relies heavily on Justice Livingston’s 
analysis in Davis v. State, 144 S.W.3d 192, 196-98 (Tex. App.—Fort 
Worth 2004, pet. filed) (op. on reh’g).
15. 
Rowell v. State, 14 S.W.3d 806, 809 (Tex. App.—Houston [1st 
Dist.] 2000) (citations omitted), aff’d, 66 S.W.3d 279 (Tex. Crim. App. 
2001).
16. 
843 S.W.2d 136 (Tex. App.—Dallas 1992, pet. ref’d).
17. 
Id. at 141.
18. 
Janecka v. State, 739 S.W.2d 813, 825 (Tex. Crim. App. 1987).
19. 
Lowery, 843 S.W.2d at 140-41 (citations omitted).
20. 
Id. at 140.
21. 
Id. at 141.
22. 
Id. (citations omitted).
23. 
Id. at 142.
24. 
Compare Gish v. State, 606 S.W.2d 883, 885-86 (Tex. Crim. App. 1980) 
(upholding warrant when affiant detective stated, in addition to fact that law 
enforcement smelled ether, a substance used in the manufacture of 
methamphetamine, outside appellant’s rural house, that (1) affiant saw known 
manufacturer of methamphetamine purchase, under suspicious circumstances, 11½ 
liters of phenylacetone, a substance used in the manufacture of methamphetamine; 
(2) affiant saw this man take the phenylacetone to appellant's residence in 
Houston; (4) affiant saw appellant with a man at the storage warehouse; (5) 
according to affiant’s informer, whose information had proved correct the 
previous day, the known manufacturer ordered a case of methylamine, a substance 
used in conjunction with phenylacetone to manufacture methamphetamine, and then 
left Houston; and (6) appellant's and the manufacturer’s cars, as well as 
appellant himself, were then seen at appellant's rural residence by other law 
enforcement officers); Moulden v. State, 576 S.W.2d 817, 818-19 (Tex. 
Crim. App. 1978) (upholding warrantless search of automobile when both officers 
at scene smelled burnt marihuana and “[i]t [wa]s apparent from the record . 
. . that the searching police officer . . . knew what the smell of burnt 
marihuana was) (emphasis added); Wynn, 996 S.W.2d at 327 (upholding 
warrant based on affidavit of officer who smelled the odor, establishing his 
expertise in the manufacture of methamphetamine, especially the unique odor 
produced during the manufacturing process, and providing information from a 
proven confidential informant); Chavez v. State, 769 S.W.2d 284, 287-88 
(Tex. App.—Houston [1st Dist.] 1989, pet. ref’d) (upholding 
warrant based on two affidavits, one from officer who stated that he smelled 
odor that he knew through his past experience as a peace officer was associated 
with the manufacture of methamphetamine and the other from a property manager 
who explained in detail that he recognized the distinctive smell because he had 
smelled it about two years earlier in a methamphetamine lab he discovered at 
another rental property).
 *    *    *    
*    *    *    *    
*    *    *    *    
*    *    *    *    
*    *    *    *    
*    *    *    *    
*    *    *    *
DISSENTING OPINION NOTES
1.  
462 U.S. 213, 234-38, 103 S. Ct. 2317, 2330-32 (1983).
2.  
803 S.W.2d 272, 289 (Tex. Crim. App. 1990) (disapproved in part by Heitman v. 
State, 815 S.W.2d 681, 685 n.6 (Tex. Crim. App.), cert. denied, 501 
U.S. 1259 (1991)).
3.  
United States v. Ventresca, 380 U.S. 102, 85 S. Ct. 741 (1965) (holding 
information provided by other police officers is presumed reliable by 
magistrate); Janecka v. State, 739 S.W.2d 813, 825 (Tex. Crim. App. 1987) 
(same); Marquez v. State, 725 S.W.2d 217, 233 (Tex. Crim. App.) (same), cert. 
denied, 484 U.S. 872 (1987).
4. 
The majority omits the “has” from its analysis; thereby concluding that 
Officer Westervelt never previously smelled the odor associated with the 
manufacture of methamphetamine.
5.  
I cannot agree with the majority that the affidavit fails to provide a time 
frame for the mentioned investigation—the affidavit indicates this 
investigation is currently ongoing—or fails to associate Appellant with the 
701 Young Street residence.
6.  
The majority claims that the State concedes the affidavit rests or falls on the 
adequacy of the information supplied to Investigator Spragins by Officer 
Westervelt, but the State’s brief argues, “The combination of information 
from the two officers informed the magistrate that a police officer who 
knows the smell produced by a methamphetamine lab detected the odor of a lab 
coming from Appellant’s home, and that a very experienced investigator with 
other corroborating facts concluded that the smell was probably coming from 
methamphetamine production in the home.”
7.  
The cases cited by the majority are, in my opinion, not controlling. Rowell 
v. State involved a warrant to search for a firearm allegedly located at the 
appellant’s residence, and the warrant was issued six months after appellant 
redeemed the pawned firearm, not a warrant issued on the same date that a police 
officer smelled a strong chemical odor emanating from the residence to be 
searched like in this case. 14 S.W.3d 806, 810 (Tex. App.—Houston [1st Dist.] 
2000), aff’d, 66 S.W.3d 279 (Tex. Crim. App. 2001) (explaining that 
“[t]he warrant was not issued for another six months after the second 
redemption”). Lowery v. State involves information provided by a 
“tipster” who had been given the information by a third person, not 
information provided by a police officer based on personal knowledge on the date 
of the issuance of the warrant like in this case. 843 S.W.2d 136, 141-42 (Tex. 
App.—Dallas 1992, pet. ref’d) (explaining that “the untested informant's 
secondhand information” which was not corroborated was not reliable).