Raymond James JONES, Appellant,

v.

The STATE of Texas, Appellee.

No. 71005.

Court of Criminal Appeals of Texas,
En Banc.

March 18, 1992.

Rehearing Denied May 20, 1992.

---

James A. DeLee, Port Arthur, Gaylyn Leon Cooper, Beaumont, for appellant.

Tom Maness, Dist. Atty. and R.W. Fisher, Asst. Dist. Atty., Beaumont, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

CAMPBELL, Judge.

Appellant, Raymond James Jones, was convicted of capital murder. Tex.Penal Code § 19.03(a)(2). At the punishment phase of appellant's trial, the jury answered affirmatively the issues set forth in Article 37.071(b) of the Texas Code of Criminal Procedure. The trial judge then sentenced appellant to death as required by Article 37.071(e). Direct appeal to this Court was then automatic. Tex.Code Crim. Proc. art. 37.071(h). We will affirm.

Appellant raises nine points of error. Point of error number eight is a challenge to the sufficiency of the evidence and will be addressed first. The remaining points will be addressed in their numerical sequence. Point of error number one challenges the State's use of its peremptory strikes. Points two through four take issue with the trial court's denial of appellant's challenges for cause. Points five and six challenge the trial court's admission of evidence obtained as a result of an illegal arrest. Point seven concerns alleged trial error in failing to charge the

jury on the lesser included offense of murder. And point of error number nine challenges the sufficiency of the evidence to support the jury's affirmative finding to the second punishment issue.

Viewed in the light most favorable to the verdict, the evidence at trial established the following facts. On the morning of June 18, 1988, police officers were dispatched to the Jefferson County residence of Su Van Dang (the victim). Upon arrival, investigating officers noticed what appeared to be blood on the walk up to the house as well as on the porch and some areas of the lawn. As one officer approached the front door, he noticed the door standing open about three inches, yet secured by a safety chain. He further observed and smelled smoke from inside the house. After entering the residence, one investigating officer found the body of the victim in a bedroom closet, the victim apparently having died of multiple stab wounds. The smoke evidently emanated from an aborted or failed attempt to burn the victim's body, as instruments of arson were found in the immediate vicinity. Further evidence revealed that the victim may have been alive at the time the fire was ignited. It was suspected that some of the victim's belongings had been taken from the residence. Investigating officers discovered a fingerprint, other than the victim's, at the scene.

As the police investigated the incident, one witness told them that appellant, the victim, and two other "Vietnamese"[1] came to her house the prior evening. The witness also told them that appellant and the victim left her house walking together. A subsequent comparison of appellant's fingerprints with the print found at the scene revealed a positive match, and an arrest warrant was issued based on that information. Appellant was arrested pursuant to this warrant on June 21, 1988. The arresting officer testified that as soon as appellant was located, he was advised of the charge against him, placed under arrest, then led to the police vehicle and given his *Miranda*[2] warnings. Immediately after

---

1. Apparently, the victim was a Vietnamese–American.

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

these warnings were given, appellant, responding to a question from one of the officers, stated that he "did it". Appellant then told the officers where to find some of the victim's missing property, including a stereo and some clothing[3].

Officers then took appellant to the police station, where he was arraigned and again given formal warnings as to his rights. When asked subsequent to the magistrate's warnings whether he wanted to continue to talk to police, he responded in the affirmative and proceeded to confess his guilt. This confession was ultimately reduced to typewritten form, a copy of which was signed. The following day, appellant again expressed a willingness to speak with officers, at which time he was given yet another set of warnings. He then gave a second written confession. Both written confessions indicate that appellant first beat and stabbed the victim; then tried to drown him; and ultimately attempted to burn him so that he (appellant) could take a stereo that he wanted from the victim's house without subsequently being identified.

■■■ In point of error number eight, appellant challenges the sufficiency of the evidence. This Court must review *all* of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Dunn v. State,* 721 S.W.2d 325, 327 (Tex.Cr.App.1986). It is clear from the record that, between the statements that appellant made in his confessions and the attendant corroborating evidence[4], appellant murdered the victim in order to facilitate his theft of the stereo.[5] Appellant maintains that a witness' testimony that he did not see appellant carrying the stereo when he exited the house negates this determination. However, the witness also testified that he was a block away and that it was rather dark.

We hold that a rational trier of fact could have found appellant guilty of the offense of capital murder beyond a reasonable doubt. Point of error number eight is overruled.

■■■ In his first point of error, appellant contends that the trial court erred by not declaring a mistrial due to the State's use of peremptory strikes against venirepersons Wright, Joubert, and Nettles. The record reveals that appellant made his objection at trial on the basis of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and Tex.Code Crim.Proc. art. 35.261[6]. Appellant then proceeded to make out a prima facie case of discrimination, and the trial court asked the State for explanations for its strikes. The State then responded, and the court overruled the *Batson* challenge in its entirety. Appellant never asked the court to declare a mistrial.[7]

---

3. The clothing was never recovered since it had been thrown in a dumpster which had been emptied prior to the officers' arrival.

4. The corroborating evidence consisted, among other things, of the fingerprint found that matched the appellant; the appellant's clothes that were located in the residence; and the subsequent location of the stolen stereo in a place where appellant said it could be found.

5. The indictment alleged that appellant murdered the victim while in the course of robbing him.

6. Article 35.261 is the Texas codification of *Batson, supra,* and provides in pertinent part:
 (a) After the parties have delivered their lists to the clerk ... and before the court has impanelled the jury, the defendant may request the court to dismiss the array and call a new array in the case. The court shall grant the motion of a defendant for dismissal of the array if the court determines that the defendant is a member of an identifiable racial group, that the attorney representing the state exercised peremptory challenges for the purpose of excluding persons from the jury on the basis of their race, and that the defendant has offered evidence of relevant facts that tend to show that challenges made by the attorney representing the state were made for reasons based on race. [Remainder omitted.] (b) If the court determines that the attorney representing the state challenged prospective jurors on the basis of race, the court shall call a new array in the case.

7. Presumably, when a party makes an objection under a specific case or code section, without otherwise praying for a remedy, he intends the remedy set forth in that particular provision.

As this case was tried after the effective date of Article 35.261, the provisions of that article apply. *Hill v. State*, 827 S.W.2d 860, 864 (Tex.Cr.App.1992) (opinion on rehearing). Article 35.261 provides for a remedy of dismissal of an array when the article's provisions have been violated. Appellant complains on appeal, however, that the trial court should have declared a mistrial. Because the objection at trial does not comport with the complaint on appeal, any error is waived.[8] *Rezac v. State*, 782 S.W.2d 869, 870 (Tex.Cr.App.1990). Point of error number one is overruled.

■ Appellant's second through fourth points of error allege trial error in the overruling of defense counsel's challenges for cause to three veniremembers, thereby forcing appellant to accept an objectionable juror after exercising all his peremptory strikes. When the trial court errs in overruling such a challenge against a veniremember, the defendant is harmed only if he uses a peremptory strike to remove the veniremember and thereafter suffers a detriment from the loss of the strike. *Demouchette v. State*, 731 S.W.2d 75, 83 (Tex.Cr.App.1986), *cert. denied*, 482 U.S. 920, 107 S.Ct. 3197, 96 L.Ed.2d 685 (1987). Error is preserved for review by this Court only if appellant 1) used all of his peremptory strikes, 2) asked for and was refused additional peremptory strikes, and 3) was then forced to take an identified objectionable juror whom appellant would not otherwise have accepted had the trial court granted his challenge for cause (or granted him additional peremptory strikes so that he might strike the juror). *Demouchette v. State*, 731 S.W.2d at 83. The order of events is crucial in order to determine if these points, or any of them, were preserved for appeal.

■ Appellant claims that his challenges for cause of veniremembers numbers two (Gloria Smith), sixteen (Silas Ancelot, Jr.), and seventeen (Arlene Grantham) were improperly denied. The record reveals that after appellant's challenge of veniremember Smith was denied, Smith became the first veniremember that appellant peremptorily struck. He then immediately requested and was denied an additional peremptory strike. By the time the appellant struck Ancelot and Grantham, he had already used six additional peremptory strikes and four jurors had been accepted by both sides.[9] Immediately after striking each of these members, appellant requested and was denied additional peremptories. Appellant used his fifteenth peremptory strike on veniremember number forty-four and the final juror (veniremember number forty-five) was seated immediately thereafter.

Appellant made no further requests for peremptory challenges. Nor did he ever establish, including in his appellate brief, that he ever had to accept an objectionable juror. Hence, appellant has not met the last prong of the *Demouchette, supra*, test and these points have not been preserved for our review. Points of error numbers two through four are overruled.

In points of error numbers five and six, appellant alleges that the trial court erred in admitting, over objection, physical evidence (the stereo), testimony regarding an oral statement of his, and two written statements, all of which were obtained after an illegal arrest. Specifically, appellant maintains that the affiant did not set forth sufficient facts in his affidavit supporting the arrest warrant to enable a neutral, detached magistrate to find probable cause.

■ It is well settled that, in determining the sufficiency of an affidavit for an arrest or search warrant, a reviewing court is limited to the "four corners of an affidavit". *Lagrone v. State*, 742 S.W.2d 659, 661 (Tex.Cr.App.1987) (and cases cited therein). This determination, however, is

---

8. Even if we found no procedural default, the trial court's ruling with respect to the venirepersons in question was not clearly erroneous. See *Whitsey v. State*, 796 S.W.2d 707, 721 (Tex.Cr. App.1990) (op. on reh'g).

9. Thus, by the time veniremember number seventeen (Grantham) was struck, the appellant had used nine of his fifteen peremptory strikes.

not meant "to place legalistic blinders on the process wherein a neutral and detached magistrate must decide whether there are sufficient facts stated to validate issuance of a proper warrant." *Id.* Rather, this Court has concluded that warrant affidavits should be interpreted in a common sense and realistic manner and the reviewing magistrate is permitted to draw reasonable inferences. *Id.*

 The affidavit in the instant cause fails even when interpreted in a common sense and realistic fashion. The affidavit read as follows:

I, Det. Tim Smith, the below signed Affiant, was assigned case # 17393–88 for follow-up investigation. On or about 6–18–88, the body of [victim] was found inside his residence at [address omitted] after the police were called by neighbors who had found blood at [victim's] front door and smoke coming from inside. An autopsy determined that [victim] had died of multiple stab wounds and my investigation determined that there was personal property taken from the residence.

During the course of my investigation a suspect identified as Raymond James Jones, M/B dob 01–01–60, developed. The finger prints of Raymond James Jones were compared to prints lifted from the crime scene and a positive match was made.

It is the Affiant's belief that Raymond James Jones, intentionally and knowingly, caused the death of [victim], and during the course of this act took personal property from the residence of [victim].

While the affiant ably sets out the fact that a crime has been committed, he then proceeds to make conclusory statements as to who may have been involved in the crime and what appellant may have done. *See Green v. State,* 615 S.W.2d 700 (Tex.Cr. App.1980), *cert. denied,* 454 U.S. 952, 102 S.Ct. 490, 70 L.Ed.2d 258 (1981); *Miller v. State,* 736 S.W.2d 643 (Tex.Cr.App.1987). He does not set forth the underlying facts that led him to make these conclusions. Hence, there were no facts that would lead a neutral and detached magistrate to conclude that appellant was the perpetrator of the crime and not merely an ordinary houseguest.[10] Given this holding that the affidavit supporting the arrest warrant was insufficient, the question remains whether the resulting taint on the evidence in question was attenuated, thereby making the evidence admissible notwithstanding the illegal arrest. *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

 In determining whether the taint on evidence obtained subsequent to an illegal arrest is sufficiently attenuated to permit the use of the evidence at trial, the United States Supreme Court has identified the following factors to be considered:

(1) whether *Miranda* warnings were given;

(2) the temporal proximity of the arrest and the confession;

(3) the presence of intervening circumstances; and,

(4) the purpose and flagrancy of the official misconduct.

*Self v. State,* 709 S.W.2d 662, 666 (Tex.Cr. App.1986), *citing Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). *See also Barber v. State,* 737 S.W.2d 824, 831–2 (Tex.Cr.App.1987)[11] (and cases cited therein). The Supreme Court was very careful in *Brown, supra,* to differentiate between the protections afforded by the Fourth Amendment and those afforded by the Fifth Amendment. In *Brown,* the Court wrote:

[E]ven if the statements in this case were found to be voluntary under the Fifth Amendment, the Fourth Amendment issue remains. In order for the causal chain, between the illegal arrest and the

---

10. This is not to say that the officer did not have enough facts in his possession to constitute probable cause, only that he did not put enough facts in his affidavit for a neutral and detached magistrate to make this determination independent of the officer's undocumented knowledge.

11. *Barber* was remanded solely for a post-conviction competency hearing. 757 S.W.2d 359 (Tex.Cr.App.1988), *cert. denied,* 489 U.S. 1091, 109 S.Ct. 1559, 103 L.Ed.2d 861. This does not affect the point in this opinion for which this case is cited as authority.

statements made subsequent thereto, to be broken [,] *Wong Sun* requires not merely that the statement meet the Fifth Amendment standard of voluntariness but that it be 'sufficiently an act of free will to purge the primary taint'. 422 U.S. at 601–2, 95 S.Ct. at 2261. Hence, we must examine each piece of evidence in question (the physical evidence (the stereo), testimony regarding the oral statement, and each of the two *written* statements) in light of the factors set out above to determine if the taint on any (or all) was sufficiently attenuated to properly permit the admission of the evidence at trial. In the instant case, as a preliminary matter, there appears to be no issue as to the voluntariness of the statements given [12], leaving us with the sole issue of attenuation of the taint and the 4–prong test set out above.

With respect to the two *written* statements, the record reflects, and appellant concedes, that *Miranda* warnings were given prior to each and there existed no flagrant official misconduct. As to the temporal proximity of the arrest and the written statements, the record reveals that the first of the two written statements was given almost immediately after appellant was taken before a magistrate, which was within two hours after he was arrested.[13] The second of those two statements was not given until the following day. Arguably, this factor would weigh in favor of appellant in relation to the first written confession, but would weigh in favor of attenuation in relation to the second written confession.[14]

As to the last factor on intervening circumstances, and its relation to the two written statements, the record shows that both of the written confessions were given to police after appellant had been taken before a neutral and detached magistrate without unnecessary delay. *See* Tex.Code Crim.Proc. arts. 14.06 and 15.17. The magistrate apprised appellant of the accusation against him, explained his rights as set out in Tex.Code Crim.Proc. art. 15.17, and set bail. Coupled with the *Miranda* warnings and the conceded absence of official misconduct, the existence of this intervening circumstance was sufficient to attenuate the taint caused by the illegal arrest.

From the foregoing analysis, we conclude that the taint on the *written* confessions was sufficiently attenuated and the trial court did not err in admitting the two *written* confessions into evidence, albeit for reasons different than those advanced by the trial judge.[15]

We now turn our attention to appellant's *oral* statement, which led to the recovery of physical evidence (the stereo).

12. Arguably, Appellant intends a voluntariness analysis under his point of error number six; however, his argument goes to attenuation of taint. Assuming arguendo that he is challenging the voluntariness of the written statements as well, we note the following: the trial court made findings of fact and conclusions of law concerning the voluntariness of the statements that Appellant made to police and found them to be given voluntarily and without coercion. Because the trial judge is the sole trier of facts at a hearing to determine the voluntariness and admissibility of statements, this Court will not disturb any finding which is supported by the record. *Self, supra.* Given the facts of the case, we find that the trial court's findings in this matter are supported by the record and hence find that the statements were voluntarily made.

13. The time span involved in the United States Supreme Court's cases of *Brown, supra,* and *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1975), and this Court's cases of *Self* and *Green, supra,* was approximately two hours.

14. Justice Stevens, in his concurring opinion in *Dunaway,* concluded that the temporal relationship between the arrest and the confession may be an ambiguous factor. Further, this Court stated in *Bell v. State,* 724 S.W.2d 780, 788 (Tex.Cr.App.1986), *cert. denied,* 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987), that "[t]he second element, temporal proximity of the arrest and the confession, is generally not a strong determining factor per se[.]" *See Barber, supra.* In fact, "[t]he lack of a significant intervening period of time does not, in itself, require that the evidence be suppressed for want of sufficient attenuation." *Miller, supra, quoting United States v. Wellins,* 654 F.2d 550, 555 (9th Cir. 1981).

15. It is well-settled that the mere fact that a correct ruling is given for the wrong reason will not result in a reversal. If the decision is correct on any theory of law applicable to the case, it will not be disturbed. *Calloway v. State,* 743 S.W.2d 645, 652 (Tex.Cr.App.1988).

With regard to the stereo, the record indicates that when the State introduced the stereo into evidence at trial, appellant affirmatively stated that "[w]e have no objections."[16] This affirmative acceptance of previously challenged evidence waives any error in its admission. *Dean v. State*, 749 S.W.2d 80, 83 (Tex.Cr.App.1988); *Gearing v. State*, 685 S.W.2d 326, 329 (Tex.Cr.App. 1985). Hence, the stereo was also properly admitted at trial.

■ The other evidence in dispute, the investigator's testimony at trial regarding appellant's oral statement, requires a more thorough analysis. Again, as stated above, and as appellant conceded, *Miranda* warnings were given prior to the oral statement and there existed no flagrant official misconduct. As to the temporal proximity of the arrest and the oral statement, the record reveals that appellant made the statement almost immediately after he was given his *Miranda* warnings and placed in the police car. This factor weighs in favor of appellant. Further, no intervening circumstances existed, which also weighs in appellant's favor. From this, we must conclude that the oral statement was tainted by the illegal arrest and that the taint was not attenuated.

■ Thus, we must now determine whether the improper admission of this evidence was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Tex.R.App.Proc. 81(b)(2).

The testimony at trial regarding the oral statement in dispute consisted of the following:

[Prosecutor]: And was [the defendant] asked anything by anyone?

[Witness]: Yes, sir, after the rights were read.

\* \* \* \* \* \*

[Prosecutor]: What did [the officer] ask him?

[Witness]: He asked [the defendant] if he knew what this was about.

\* \* \* \* \* \*

[Prosecutor]: What did he say?
[Witness]: [The defendant] said, "Some Vietnamese, huh?"
[Prosecutor]: Did [the officer] say anything in response to that?
[Witness]: He said something to the effect of "Well, do you know anything about it?"

\* \* \* \* \* \*

[Prosecutor]: What did the defendant respond, if anything?
[Witness]: He said, "Yeah, I did it."

\* \* \* \* \* \*

[Witness]: [The defendant] went on to say something else, I believe, about some explanation as to why, ...

\* \* \* \* \* \*

[Witness]: I believe it was something to the effect of "I had to do it. This Vietnamese had pulled a gun on me."

And [the officer] stopped him and said, "Just wait till we get you formally arraigned and we'll talk about it."

And [the defendant] told us that he didn't mind speaking of it and he would tell us anything we wanted to know.
[Prosecutor]: Okay. Did—at that point in time did he agree to take you to where some items might be recovered?
[Witness]: Yes, sir.
[Prosecutor]: Where did he tell you to go?
[Witness]: He directed us to an address on Seventh Street. I believe it was in the 2700 block. It's where his sister lives.
[Prosecutor]: And did he tell you what could be located there?

\* \* \* \* \* \*

[Witness]: He said there was a stereo cassette recorder—tape player stereo, I guess, that was at that location.
[Prosecutor]: And did you and the other officers, along with the defendant, proceed to that location?

---

**16.** Prior to trial, appellant filed a motion to suppress the two written confessions and the stereo obtained pursuant to the oral statements which appellant made. This motion was overruled by the trial court.

[Witness]: Yes, sir, we did.

\*　　\*　　\*　　\*　　\*　　\*

[Prosecutor]: Did you eventually recover a stereo there?

[Witness]: Yes, sir, we did.

 When determining whether erroneously admitted evidence is harmless beyond a reasonable doubt, the question is not whether sufficient evidence to convict existed without this evidence, but whether there is a reasonable possibility that the erroneously admitted evidence contributed to the verdict obtained. In other words, was there "a reasonable possibility that the error, either alone or in context, moved the jury from a state of nonpersuasion to one of persuasion beyond a reasonable doubt as to the issue in question"? *Cook v. State*, 821 S.W.2d 600, 605 (Tex.Cr.App.1991) (Campbell, J., concurring). If the answer to the question is "yes", then the error cannot be considered harmless. *Id.* We find that there is no reasonable possibility that the testimony, either alone or in context, so moved the jury and that the testimony was therefore harmless beyond a reasonable doubt.

Two factors lead us to this conclusion: First, the oral statement was clarified in great detail later in the two written statements that we have already held were properly admitted into evidence. Secondly, in its closing argument, the State made only a passing reference to the oral statement and the reference was in the context that this oral statement was the only evidence supporting a self-defense claim. Points of error numbers five and six are overruled.

 In point of error number seven, appellant complains that the trial court erred in failing to charge the jury on the lesser included offense of murder after such a charge was timely requested. In determining whether the refusal was error, this Court must look at all of the evidence presented at trial. *Havard v. State*, 800 S.W.2d 195 (Tex.Cr.App.1989); *Lugo v. State*, 667 S.W.2d 144 (Tex.Cr.App.1984). Just because a lesser offense is included within the proof of a greater offense does not always warrant a jury charge on the former. *Lincecum v. State*, 736 S.W.2d 673 (Tex.Cr.App.1987), *cert. denied*, 486 U.S. 1061, 108 S.Ct. 2835, 100 L.Ed.2d 936 (1988).

 This Court has consistently held that a two-prong test must be met before a jury charge on a lesser included offense must be allowed: first, the lesser included offense must be included within the proof necessary to establish the offense charged, and, secondly, some evidence must exist in the record that if the defendant is guilty, he is guilty of only the lesser offense. *Aguilar v. State*, 682 S.W.2d 556, 558 (Tex. Cr.App.1985) [17].

 Applying this test to the facts of the case at bar, we may assume, arguendo, that appellant meets the requirements of the first prong of the *Royster* test in that murder as alleged here is a lesser included offense of capital murder.[18] The remaining issue, then, is whether evidence exists in the record that, if the defendant is guilty, he is guilty *only* of the lesser included offense of murder.

The second prong of the test, however, is not satisfied. As discussed in our analysis

---

**17.** Citing what is now commonly referred to as the "Royster test" from *Royster v. State*, 622 S.W.2d 442 (Tex.Cr.App.1981).

**18.** Tex.Penal Code § 19.03 provides in part that:
(a) A person commits an offense if he commits murder as defined under Section 19.-02(a)(1) of this code and: [remainder omitted].
Whereas, Tex.Penal Code § 19.02 provides in part that:
(a) A person commits an offense if he:
(1) intentionally or knowingly causes the death of an individual;

(2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual[.]
Assuming Appellant meant "murder" as defined in Tex.Penal Code § 19.02(a)(1), above, then it is clearly a lesser included offense of capital murder. If, however, Appellant is contending that he committed "murder" as defined in Tex.Penal Code § 19.02(a)(2), we would have to make a different analysis. But because of the outcome under the second prong of the *Royster* test, we need not make this analysis.

of appellant's point of error number eight on the sufficiency of the evidence, appellant himself confessed that he killed the victim to facilitate his taking of the stereo without being later identified. This negates appellant's contention that he could have been found guilty *only* of murder. The lesser included charge was properly refused and point of error number seven is overruled.

Appellant maintains in his point of error number nine that the evidence was insufficient to sustain the jury's affirmative answer to the second special issue on future dangerousness. Tex.Code Crim. Proc. art. 37.071(b)(2). In reviewing whether the evidence is sufficient to support the jury's affirmative finding on the issue of future dangerousness, this Court must look at the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have believed beyond a reasonable doubt that appellant would probably commit criminal acts of violence that would constitute a continuing threat to society. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Allridge v. State*, 1991 WL 235159 (Tex.Cr.App. No. 69,838, delivered November 13, 1991) (opinion on rehearing). This Court has set out a number of factors that may be considered in making this determination[19], although the facts of the crime alone can be sufficient to support the affirmative finding to the special issue. *Allridge, supra*. In fact, the circumstances of the crime may provide greater probative evidence of a defendant's probability for committing future acts of violence than any other factor relevant to the second special issue. *Id.*

The jury had a wealth of evidence before it to consider during appellant's punishment phase. The evidence of the crime itself showed that the murder was a particularly brutal one. Not only did appellant beat and stab the victim a number of times, but then he proceeded to attempt to drown him in the bathtub, and upon failing that, shoved the victim in a closet and attempted to set fire to the scene presumably in an attempt to cover his crime. The jury was also given evidence of appellant's prior conviction for aggravated robbery. Finally, the State presented the jury with testimony from a psychiatrist indicating that appellant would be a continuing threat to society. Presumably in mitigation, evidence was presented that both appellant and the victim had been drinking heavily that evening. And the jury was presented with testimony from a psychologist stating that appellant would not be a continuing threat to society.

The main thrust of appellant's argument seems to be that the evidence he presented through his experienced forensic psychologist should heavily outweigh the evidence presented by the State through its less experienced psychiatrist. He also points to such allegedly mitigating factors as his below average I.Q. and his "limited understanding and inability to cope with a situation";[20] however, he points to nowhere in the record where evidence of these specifics can be found. Given the brutal facts of the case, appellant's prior record, and the expert testimony, we reject appellant's argument. Looking at the evidence in the light most favorable to the verdict, we find that the evidence is sufficient to support the jury's affirmative finding to special issue number two. Point of error number nine is overruled.

Finding no reversible error, we affirm appellant's conviction.

CLINTON and MILLER, JJ., concur in the result.

OVERSTREET, J., dissents.

---

19. *See Vuong v. State*, 830 S.W.2d 929 (Tex.Cr. App.1992) (rehearing denied February 12, 1992); *Keeton v. State*, 724 S.W.2d 58 (Tex.Cr.App. 1987) ("*Keeton I*"). Note that the list set out in these cases is not exclusive.

20. Appellant raises no *Penry* claim on appeal. *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). The record reveals, moreover, that a *Penry* instruction was given in the charge on punishment.