**Opinion issued on February 28, 2012 is Withdrawn; Affirmed and Substitute Opinion filed March 29, 2012.**



In The

# Fourteenth Court of Appeals

## NO. 14-11-00062-CR

**ALEXIS FLORES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 209th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1187782**

## S U B S T I T U T E   O P I N I O N

On our own motion, we withdraw our opinion issued on February 28, 2012 and issue this substitute opinion.

Appellant, Alexis Flores, appeals his conviction of murder. In three issues, appellant contends the trial court erred by denying his motion to suppress. We affirm.

### I.  BACKGROUND

On or around September 27, 2002, the complainant, Pete Gonzales, was stabbed to death at a Houston apartment. Police officers discovered evidence linking appellant to

the murder. Officer J.C. Padilla of the Houston Police Department ("HPD") signed a complaint before an assistant district attorney and brought the complaint to a magistrate, seeking an arrest warrant. After obtaining a warrant, Officer Padilla arrested and interviewed appellant. During the interview, appellant admitted that he stabbed the complainant but maintained he did not cause the complainant's death. Subsequently, a jury found appellant guilty of murder and assessed punishment at life imprisonment.

## II. MOTION TO SUPPRESS

In three issues, appellant contends the trial court erred by denying his motion to suppress.

### A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). We view the evidence adduced at a suppression hearing in the light most favorable to the trial court's ruling. *Champion v. State*, 919 S.W.2d 816, 818 (Tex. App.—Houston [14th Dist.] 1996, pet. ref d). The trial court is the sole finder of fact and is free to believe or disbelieve any or all of the evidence presented. *Id.* We give almost total deference to the trial court's determination of historical facts that depend on credibility and demeanor but review *de novo* the trial court's application of the law to the facts if resolution of those ultimate questions does not turn on evaluation of credibility and demeanor. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). When the trial court does not file any findings of fact, as in this case, we review the evidence in the light most favorable to the trial court's ruling. *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005).

An affidavit in support of a request for an arrest warrant is referred to as a "complaint." Tex. Code Crim. Proc. Ann. art. 15.04 (West 2005). In assessing whether sufficient facts were alleged in a complaint to support probable cause to arrest the accused, we are limited to the four corners of the complaint. *Hankins v. State*, 132

2

S.W.3d 380, 388 (Tex. Crim. App. 2004). We must interpret the complaint in a common sense and realistic manner, recognizing the magistrate is permitted to draw reasonable inferences. *Id.* A judgment regarding probable cause cannot be based on a mere conclusory statement made within a complaint. *See Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007). When in doubt, we defer to all reasonable inferences the magistrate could have made. *Id.*

## B. Analysis

### 1. Probable Cause

In his first issue, appellant contends the trial court erred by overruling his motion to suppress because Officer Padilla's complaint did not establish probable cause to arrest appellant for murder. In pertinent part, Officer's Padilla asserted the following facts in his complaint:

> Affiant read the portion of Houston Police Department offense report number 138904502 which was written by [J.M. Weesner], who was a peace officer employed by [HPD] on September 27, 2002. Weesner wrote that he was dispatched to 7255 Corporate Drive #1714, Houston, Texas on September 27, 2002. Affiant knows that this is a location in Harris County, Texas. Weesner wrote that when he arrived at the scene he spoke to Stephanie Wilson. Wilson told him that Pete Gonzales, hereafter called the complainant, was her boyfriend. Weesner wrote that Wilson told him that she spoke to the complainant at 8:00 PM on September 26, 2002 and he told her he was trying to find a ride to Wilson's house. Wilson said that the complainant never came to her house. Wilson told Weesner that on September 27, 2002 she went to the complainant's apartment . . . . Wilson told Weesner that the front door was unlocked. Wilson stated that when she opened the front door to the apartment she saw the complainant seated on the sofa and that he was dead.

> Affiant read the portion of [HPD] offense report number 138904502 which was prepared by J. C. Wood, who was employed as a peace officer with [HPD]. Wood wrote that he was dispatched to 7255 Corporate # 1714 on September 27, 2002. . . . Wood wrote that he found no signs of forced entry into apartment #1714. Wood wrote that the complainant was positioned on a couch against the wall. Wood wrote that the complainant had multiple puncture wounds to his neck and chest area. Wood noted several areas in the apartment that contained blood evidence. Wood also

noted that there were blood stains located on the west side of the apartment building that contained apartment #1714. He wrote that the blood stains appeared to be drip patterns consistent with someone bleeding slightly and walking in a westerly direction. He wrote that the stains led to a payphone outside of the laundry room. Wood noted that there were blood stains on the phone as well as blood stains beneath the phone. Wood wrote that the blood stains beneath the phone were consistent with someone bleeding at a moderate [rate] and remaining in a stationary position in front of the phone. Wood wrote that he collected blood samples from the concrete in front of the phone, the inside of the payphone, the kitchen counters of the sink, the dining room table, the exterior side of the bedroom door and the bedroom sink basin. Wood wrote that he collected these samples separately and tagged them into the HPD property room freezer.

Affiant read the portions of [HPD] offense report number 138904502 which were prepared by R. Parish, who was employed as a peace officer with [HPD]. Parish wrote that he went to the above scene on September 27, 2002. . . . Parish stated that a knife was found in the kitchen sink in the apartment under a frying pan. Parish said that the frying pan was full of water that appeared to be discolored with blood. Parish wrote that the complainant sustained over twenty-five knife wounds to the left side of his chest and also sustained over twenty-five wounds to the left side of his neck. Parish noted that the complainant had a defensive wound to the index finger of his right hand.

Parish wrote that he interviewed Francisco Machado. Machado told Parish that he lived in the above apartment with Wendy Hernandez. Machado said that the complainant had been staying with them. Machado stated that he was drinking with the complainant, the defendant and "Adrian" on his balcony during the evening of September 26, 2002. Machado stated that he later called his mother to come get him. Machado stated that the complainant left before Machado called his mother. Machado said that his mother came to get him and that he went to his mother's house with Hernandez. Machado said that the defendant had bragged about killing a man in the past.

Parish wrote that he spoke to Hernandez. Hernandez stated that as she was leaving her apartment with Machado to go to Machado's mother's house on September 26, 2002 that she saw the complainant returning to her apartment with a box of beer.

. . . Parish spoke to David Osorio, who is employed as a detective in Charlotte, North Carolina, on September 17, 2004. Osorio said that the defendant had been arrested in Charlotte. Osorio stated that he had obtained a buccal swab from the defendant and that he would ship it to the

Houston Police Department.

[Affiant asserts facts sufficiently establishing when HPD received the buccal swab and sent the swab and the evidence samples collected in this case to Identigene.]

Affiant received a copy of the Identigene report for this case. The report was signed by Robin DeVille Guidry, who was employed as a Senior Forensic DNA Analyst, and Laura Gahn, who was employed as the DNA Laboratory Director. The report states that a full single-source male DNA profile was obtained from the swabs labeled side walk near drain, side walk near #1509, side walk near #1513 concrete in front of phone, metal portion of phone box, kitchen counters of sink, S.W. corner of dining room table and ext. side of bedroom door. The report states that the profile obtained matches the DNA profile obtained from the defendant's buccal swab.

During the suppression hearing, Officer Padilla admitted that the affidavit did not contain information relative to the time appellant's blood was deposited in and around the complainant's apartment and on the payphone. Officer Padilla also testified that at the time he signed the complaint, he did not have any facts to disprove appellant deposited his blood as a victim, rather than perpetrator, of the crime. Appellant argues the absence of such facts rendered the complaint insufficient to establish probable cause that he committed the murder.

Appellant relies on *Jones v. State*, 833 S.W.2d 118, 124 (Tex. Crim. App. 1992). Jones was arrested pursuant to an arrest warrant for allegedly committing capital murder. *Id.* at 123–24. In the complaint supporting the warrant, an officer asserted that (1) the complainant's body was found in his residence, (2) the complainant died from multiple stab wounds, (3) personal property was taken from the residence, (4) blood was found on the complainant's front door, and (5) the defendant's fingerprints were found at the crime scene. *Id.* at 124. The Court of Criminal Appeals determined these facts were insufficient to establish probable cause that the defendant committed the crime. *Id.* Unlike the facts alleged in *Jones*, which merely supported a finding that the defendant was present at some point at the crime scene, the facts alleged by Officer Padilla support a finding of probable cause that appellant committed the murder.

5

Officer Padilla's affidavit supported the following findings: (1) there was no indication that someone forcibly entered the complainant's apartment; (2) the complainant was stabbed in the chest and neck at least fifty times; (3) appellant, the complainant, and "Adrian" were at the apartment on the night of the murder; (4) appellant had a criminal history and bragged at some point about having previously killed someone; (5) appellant's blood was found on counters around the kitchen sink, dining table, bedroom door, sidewalk outside the apartment, and nearby payphone; and (6) a knife was found under a frying pan in the kitchen sink, and water in the frying pan appeared discolored with blood. The magistrate could have determined appellant's blood was deposited in and around the apartment that evening based on a reasonable inference someone would have cleaned the blood had it been deposited earlier.

The facts also establish probable cause that appellant was the perpetrator of the offense rather than a victim. Both the complainant and appellant were injured that evening. However, the complainant was stabbed at least fifty times whereas the appellant was able to exit the apartment and walk to a payphone after sustaining an injury. The magistrate could have reasonably believed the perpetrator would not have viciously stabbed the complainant fifty times but allowed an eyewitness to survive with only mild injuries. Furthermore, if appellant had escaped the apartment while the perpetrator remained, it is likely appellant would have fled to a safer location than a nearby payphone. Additionally, blood stains on the sidewalk leading to the payphone were "consistent with someone bleeding slightly and *walking* in a westerly direction."[1] The fact that appellant walked, instead of ran, to the payphone indicates that he was not attempting to flee from a homicidal attacker.

---

[1] According to the factual allegations in the complaint, although Officer Wood noticed blood on the sidewalk leading to the payphone, the list of locations where he collected blood samples did not include the sidewalk. Nevertheless, according to the Identigene report, appellant's blood matched that collected from various areas including the sidewalk. We conclude these facts support an inference that officers collected blood samples from the sidewalk. *See Lagrone v. State*, 742 S.W.2d 659, 662 (Tex. Crim. App. 1987) (explaining complaint not insufficient merely because officer failed to "explicitly state the obvious").

6

Accordingly, the alleged facts support the following findings: (1) there was no indication that someone forcibly entered the complainant's apartment; (2) at some point, appellant bragged about having previously killed someone; (3) appellant's blood was deposited that evening in multiple places, including on the counters near the sink where a knife was hidden; and (4) because of the disparity between his injuries and those sustained by the complainant, appellant was not a mere victim of the offense. Although these facts do not overwhelmingly demonstrate appellant's guilt, we conclude they support a finding that probable cause existed to arrest appellant for the complainant's murder. *See Guzman*, 955 S.W.2d at 86–87 ("Probable cause deals with probabilities; it requires more than mere suspicion but far less evidence than that needed to support a conviction or even that needed to support a finding by a preponderance of the evidence.").[2] Appellant's first issue is overruled.

### 2. Signature before Assistant District Attorney

In his second and third issues, appellant contends the trial court erred by overruling his motion to suppress because the magistrate did not personally administer the oath to Officer Padilla before he swore to the facts in his complaint, as purportedly required under the Fourth Amendment to the United States Constitution and article 15.03 of the Texas Code of Criminal Procedure.[3] It is undisputed that Officer Padilla swore to and signed the complaint before an assistant district attorney.

Under the Fourth Amendment, "no Warrants shall issue, but upon probable cause, *supported by Oath or affirmation*, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV (emphasis added). There is no requirement in this language that the facts supporting probable cause be sworn to before a magistrate. *See United States v. Tortorello*, 342 F. Supp. 1029, 1035 (S.D.N.Y.

---

[2] We acknowledge it is indeterminable from the facts alleged in the complaint whether "Adrian" was a victim, an offender, or absent at the time of the offense. However, the lack of this detail did not prevent the magistrate from determining probable cause existed for appellant's arrest.

[3] We note appellant does not challenge whether the assistant district attorney had authority to administer an oath.

1972) ("Nothing in the Fourth Amendment required the prosecuting attorneys to swear to contents of their affidavits in the presence of a judge."). Thus, we reject appellant's contention relative to the Fourth Amendment and overrule his second issue.

Under article 15.03, "A magistrate may issue a warrant of arrest . . . [w]hen any *person shall make oath before the magistrate* that another has committed some offense against the laws of the State." Tex. Code Crim. Proc. Ann. art. 15.03(a)(2) (West Supp. 2011) (emphasis added). Assuming, without deciding, that the emphasized language requires a magistrate to personally administer the oath before the affiant swears to the facts asserted in his complaint,[4] we conclude the trial court could have nonetheless determined appellant's custodial statement was admissible under article 38.23(b). *See Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005) (recognizing trial court's suppression ruling "must be upheld if it is correct under any theory of law applicable to the case"). At least two courts of appeals have determined that evidence was admissible under the good faith exception even though the evidence was obtained pursuant to a warrant based on an improperly sworn complaint. *See Hunter v. State*, 92 S.W.3d 596, 602–04 (Tex. App.—Waco 2002), *overruled on other grounds*, *Smith v. State*, 207 S.W.3d 787 (Tex. Crim. App. 2006); *Brent v. State*, 916 S.W.2d 34, 37–38 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd).

Article 38.23(b) provides the following good faith exception for admission of evidence obtained in violation of the law: "It is an exception to the provisions of Subsection (a) of this Article that the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based upon probable cause." Tex. Code Crim. Proc. Ann. art. 38.23(b) (West 2005). Under the unambiguous language of the good faith exception, we must first determine whether the warrant was issued on probable cause. *Curry v. State*, 815 S.W.2d 263, 265 (Tex. App.—Houston [14th Dist.] 1991, no pet.). We then assess the objective—not

---

[4] We have found no case in which a Texas court definitively answered whether, under article 15.03(a)(2), a complaint must be sworn to and signed before a magistrate.

8

subjective—good faith of the officer executing the warrant. *See Dunn v. State*, 951 S.W.2d 478, 479 (Tex. Crim. App. 1997).

We have already determined that the warrant was issued on probable cause. It is undisputed that the warrant was issued by a magistrate. We presume the magistrate was neutral, and there is no evidence in the record rebutting this presumption. *See Roman v. State*, 145 S.W.3d 316, 319 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) ("In the absence of a clear showing to the contrary, this court will presume that the trial court was neutral and detached."). Thus, we must determine whether the evidence supports a finding that Officer Padilla acted in objective good faith reliance upon the warrant when he arrested appellant.

Officer Padilla prepared a lengthy complaint in which he asserted numerous facts regarding appellant's participation in the murder. At the suppression hearing, Officer Padilla testified as follows. Pursuant to the standard procedure of HPD, Officer Padilla swore to and signed the complaint in the presence of an assistant district attorney. On the same day, Officer Padilla presented the complaint to a magistrate. In Officer Padilla's presence, the magistrate read the complaint and signed a warrant. Officer Padilla does not recall the magistrate asking him questions regarding sufficiency of the complaint. The warrant contains the following language: "Complaint has been made under oath that alleges that in Harris County, Texas, [appellant] did on or about 09/27/2002 commit the offense of murder." Officer Padilla presented the warrant to appellant and arrested him "without incident" at 7:14 p.m. Officer Padilla transported appellant to a police station, where appellant was *Mirandized* and interviewed; appellant was not brought before a magistrate prior to the interview.

We conclude these facts support a finding that Officer Padilla acted in objective good-faith reliance upon the warrant when he arrested appellant, particularly because (1) Officer Padilla testified he followed standard procedure in attesting to his complaint and obtaining the warrant and (2) the warrant contained language indicating that the

complaint was made under oath. Accordingly, we uphold the trial court's denial of appellant's motion to suppress and overrule his third issue.

We affirm the trial court's judgment.


/s/     Charles W. Seymore
Justice


Panel consists of Justices Frost, Seymore, and Jamison.

Publish — Tex. R. App. P. 47.2(b).