**Affirmed and Memorandum Opinion filed September 6, 2012.**



In The

# Fourteenth Court of Appeals

## NO. 14-11-00961-CR

**ZANZETTA ALVINA FRANKLIN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 3 and Probate Court
Brazoria County, Texas
Trial Court Cause No. 179470**

## M E M O R A N D U M   O P I N I O N

In three issues, appellant Zanzetta Alvina Franklin argues that the trial court erred by denying her motion to suppress and by permitting the State to ask leading questions of its witness. We affirm.

### BACKGROUND

In May 2010, Officer Dusty Wortman of the Pearland Police Department saw a vehicle swerve in and out of an oncoming lane of traffic. Officer Wortman stopped the vehicle and identified appellant as the driver. He asked appellant to step out of the vehicle and observed that she swayed and appeared unsteady on her feet. Officer Wortman also

detected an odor of alcohol emanating from appellant and found that she had red, bloodshot, and watery eyes. Appellant admitted to the officer that she had consumed one beer that evening. Examination of the vehicle's interior revealed an open container of vodka and an empty can of beer.

Officer Wortman initiated a horizontal gaze nystagmus test on appellant. The test ended, however, when appellant refused to follow the officer's instructions. The officer attempted to administer additional field sobriety tests, but appellant refused again to cooperate. Officer Wortman then placed appellant under arrest for driving while intoxicated.

When appellant refused to voluntarily provide a blood specimen, Officer Wortman petitioned for a search warrant to have a blood draw performed. The petition was faxed with a completed application and affidavit to a Pearland municipal judge. The judge swore the officer over the telephone and transmitted the warrant via facsimile.

With the warrant secured, Officer Wortman escorted appellant to a freestanding emergency room clinic where a specimen of her blood was collected. Appellant became combative with a registered nurse and verbally resisted the extraction of her blood. Her behavior attracted the attention of Trinidy Boutwell, an officer waiting in nearby room. Officer Boutwell came to assist Officer Wortman in restraining appellant for the procedure. During that process, appellant managed to scratch one of the officers as he attempted to restrain her.

Testing revealed that appellant's blood alcohol level was 0.266, more than three times the legal limit. At trial, appellant moved to suppress the blood specimen evidence, arguing that it was procured by an invalid search warrant. In her motion to suppress, appellant specifically maintained that the warrant was defective because the arresting officer did not swear to the affidavit in the presence of the magistrate. Appellant also urged that the blood results should be suppressed because the blood sample was extracted using unreasonable means and excessive force.

The trial court denied the motion to suppress, finding that the officer obtained the blood sample under a good faith belief that he had a valid search warrant based on probable cause issued by a neutral magistrate. The court also determined that the use of force during the execution of the warrant was reasonable under the facts and circumstances.

The jury convicted appellant of driving while intoxicated. Punishment was assessed at 180 days' community supervision. This appeal followed.

## ANALYSIS

### I.    Motion to Suppress

In her first and third issues, appellant argues that the trial court erred by denying her motion to suppress because the blood sample was obtained pursuant to a defective warrant, and because the blood draw was performed using unreasonable means in violation of her constitutional rights.

When reviewing a trial court's ruling on a motion to suppress evidence we use a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). We do not engage in our own factual review in evaluating the trial court's decision. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). The trial judge is the sole trier of fact and determining body of the credibility of witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). Consequently, we give almost total deference to the trial court's determination of historical facts when they are supported by the record, as well as to the trial court's rulings on mixed questions of law and fact when resolution of those questions depends upon an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673. This same highly deferential standard applies regardless of whether the trial judge has granted or denied a motion to suppress evidence. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). Thus, the party who prevailed in the trial court is afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn

from that evidence. *Id.* We review de novo the trial court's application of law to any facts that do not turn on an evaluation of credibility and demeanor. *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). All purely legal questions are reviewed de novo. *Kothe v. State*, 152 S.W.3d 54, 62–63 (Tex. Crim. App. 2004).

## A.    Validity of the Warrant

Article 18.02 of the Texas Code of Criminal Procedure provides that a warrant may be issued for the seizure of blood. *See* Tex. Code Crim. Proc. Ann. art. 18.02(10) (West 2011); *Gentry v. State*, 640 S.W.2d 899, 902 (Tex. Crim. App. 1982). Before a search warrant may issue, however, the peace officer requesting the warrant must file a sworn affidavit "setting forth substantial facts establishing probable cause." Tex. Code Crim. Proc. Ann. art 18.01(b).

Appellant contends that the warrant used to obtain her blood draw was invalid because Officer Wortman did not personally swear an oath in the presence of a magistrate. Her argument depends on the premise that Texas law requires a face-to-face meeting between officer and judge, an issue that has divided some courts of appeals.

In an unpublished opinion, the Tyler Court of Appeals concluded that telephonic oaths do not comply with Texas law, and that an officer seeking a warrant must make "a physical, personal appearance . . . either before the magistrate, or before someone who is qualified to administer oaths." *Aylor v. State*, No. 12-09-00460-CR, 2011 WL 1659887, at *4 (Tex. App.—Tyler Apr. 29, 2011, pet. ref'd) (mem. op., not designated for publication). More recently, the Waco Court of Appeals disagreed with that opinion, concluding that face-to-face meetings between officer and judge are not required. *Clay v. State*, — S.W.3d —, No. 10-09-00355-CR, 2012 WL 955323, at *4–5 (Tex. App.—Waco Mar. 21, 2012, pet. granted). In reaching their decisions, both courts relied on different readings of the same case, *Smith v. State*, 207 S.W.3d 787 (Tex. Crim. App. 2006).

4

In *Smith*, the court of criminal appeals held that an officer's failure to sign a probable cause affidavit did not invalidate a warrant if other evidence could prove that the officer swore to the facts contained in the affidavit before the issuing magistrate. *Id.* at 793. Recognizing that the purpose of the oath is to call upon the affiant's sense of moral duty to tell the truth, the court reasoned that it is the act of swearing, not the signature itself, that is essential to the validity of the affidavit. *Id.* at 792. The court also expressed that it was important for the law to retain some flexibility in the face of technological advances:

> For example, the federal courts and some state courts, now permit telephonic search warrants, and one can foresee the day in which search warrants might be obtained via e-mail or a recorded video conference with a magistrate located many miles away. In a state as large as Texas, such innovations should not be foreclosed by the requirement of a signed affidavit if the officer's oath can be memorialized by other, equally satisfactory, means. We leave those potential future changes to the Texas Legislature, but we should not stand in the way of the future by declaring that all affidavits, which are properly sworn to but unsigned, are necessarily invalid.

*Id.* at 792–93 (footnotes omitted).

The *Aylor* Court construed *Smith* as implying that purely telephonic oaths were not permissible under established law. *See Aylor*, 2011 WL 1659887, at *3–4 (citing *Lowry v. State*, 164 Tex. Crim. 178, 181–83, 297 S.W.2d 848, 850–51 (1956), *superseded by statute on other grounds as stated in Hardy v. State*, 213 S.W.3d 916 (Tex. Crim. App. 2007); and *Sullivan v. First Nat'l Bank of Flatonia*, 37 Tex. Civ. App. 228, 229, 83 S.W. 421, 422 (1904, no writ)). Relying on dicta in *Smith*, the court suggested that allowing such oaths would represent a shift in the law more properly left to legislative judgment. *See id.* at *4 (referring, in part, to "quoted dicta" as authority that a physical, personal appearance is necessary). The *Clay* Court seized on other language in *Smith*, which focused on the purpose of an oath and the need for flexibility in the law. *Clay*, 2012 WL 955323, at *4–5. In this more expansive reading, the court concluded that a face-to-face meeting was not required because it was the act of swearing that was paramount. *Id.*

Moreover, because the judge in *Clay* was personally familiar with the officer's voice, the court determined that there were "very strong indicia of truthfulness, trustworthiness, and reliability" in the procedure that was employed. *Id.*

Confronted with this split in authority, the court of criminal appeals is presently considering whether Texas law requires a face-to-face meeting between officer and judge.[1] We need not decide that issue here, as we may dispose of this case on narrower grounds. Assuming without deciding that the affidavit was defective due to the manner in which it was presented, we conclude that appellant's blood was seized pursuant to an applicable "good faith exception" provided under article 38.23 of the Texas Code of Criminal Procedure. *See Estrada*, 154 S.W.3d at 607 (recognizing that a trial court's suppression ruling "must be upheld if it is correct under any theory of law applicable to the case"); *Swenson v. State*, No. 05-09-00607-CR, 2010 WL 924124, at *2 (Tex. App.— Dallas Mar. 16, 2010, no pet.) (mem. op., not designated for publication) (analyzing the good faith exception where issue of telephonic oath was unnecessary to disposition of the case).

Article 38.23(a) provides that evidence obtained in violation of the law may not be admitted in evidence against the accused on the trial of any criminal case. Tex. Code Crim. Proc. Ann. art. 38.23(a). This rule is otherwise known as the exclusionary rule. Article 38.23(b) provides that "[i]t is an exception to the provisions of Subsection (a) of this Article that the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on

---

[1] The court of criminal appeals granted a petition for discretionary review in *Clay v. State* on June 27, 2012, based on the following issues presented:

> 1. The trial court erred in denying appellant's motion to suppress by ruling that the affiant in support of a search warrant under Texas law need not personally appear before the magistrate to swear out the truthfulness of the facts in support thereof.

> 2. Whether search warrants issued based on oaths administrated telephonically and/or by facsimile are valid absent the adoption by the Texas Legislature of a statutory scheme providing for same?

*See* Granted Issues, http://www.cca.courts.state.tx.us/issues/ISSUES.pdf (last visited August 29, 2012).

probable cause." *Id.* art. 38.23(b); *see Dunn v. State*, 951 S.W.2d 478, 479 (Tex. Crim. App. 1997) (concluding that exception applied in case where magistrate had failed to sign the warrant, as was required by statute, but record otherwise established that officers had acted in objective good faith).

The good faith exception was not discussed in *Aylor* because the state did not argue the issue at trial or on appeal. *See Aylor*, 2011 WL 1659887, at *4. In *Clay*, the good faith exception was addressed only in a concurring opinion. *See Clay*, 2012 WL 955323, at *5–7 (Davis, J., concurring) (criticizing the *Clay* majority for forging new public policy by concluding that purely telephonic oaths were permissible, and arguing that the case could have been disposed on narrower grounds where trial stipulations indicated that the officer had acted in objective good faith). In the present case, the trial court expressly cited the good faith exception as a basis for denying appellant's motion to suppress. In deciding whether the good faith exception was correctly applied, we first determine whether the warrant was issued on probable cause. *Flores v. State*, 367 S.W.3d 697, 703 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). We then assess the objective—not subjective—good faith of the officer executing the warrant. *Id.*

No one disputes that the warrant was issued on probable cause in this case. It is also undisputed that the warrant was issued by a magistrate. We presume the magistrate was neutral, and there is no evidence in the record rebutting this presumption. *See Roman v. State*, 145 S.W.3d 316, 319 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) ("In the absence of a clear showing to the contrary, this court will presume that the trial court was neutral and detached."). Thus, we must ascertain whether the evidence supports a finding that Officer Wortman acted in objective good faith reliance upon the warrant when he arrested appellant.

Officer Wortman prepared a comprehensive affidavit in which he asserted numerous facts pertaining to appellant's intoxication. At the suppression hearing, Officer Wortman testified that he believed that he was in possession of a valid search warrant at the time of the blood draw. The warrant contains language that the judge authorized the

search after reviewing "an affidavit in writing, under oath, hav[ing] been made before [him] by D. Wortman." Officer Wortman stated that there was nothing about the warrant that may have caused him to believe that it was invalid, and that he had a good faith belief that the warrant was issued based on probable cause by a neutral magistrate. Officer Wortman also testified that after he executed the warrant, he signed it and turned it in along with his report to the municipal court.

We conclude these facts support a finding that Officer Wortman acted in objective good-faith reliance upon the warrant during the evidentiary search. *Cf. Flores*, 367 S.W.3d at 703 (concluding that officer acted in good faith where officer testified that he followed standard procedure in attesting to his complaint and obtaining the warrant, and where the warrant contained language indicating that the complaint was made under oath). Appellant's first issue is overruled.

## B.     Reasonableness of the Blood Draw

Appellant maintains next that the State conducted the blood draw using unreasonable methods. Specifically, appellant complains that no inquiry into her medical history was conducted prior to the procedure, the officers restrained her using excessive force during the procedure, and this use of force resulted in appellant's transfer to a hospital via ambulance.

The United States Supreme Court has adopted a two-part test for determining the legality of a blood draw. *See Schmerber v. California*, 384 U.S. 757, 768 (1966). A blood draw is permissible under the Fourth Amendment if the police had justification in requiring the suspect to submit to a blood test, and the police employed reasonable means and reasonable procedures in taking the suspect's blood. *Id.*; *accord State v. Johnston*, 336 S.W.3d 649, 658 (Tex. Crim. App. 2011). Here, appellant does not challenge whether the police had probable cause or justification to obtain a sample of her blood. Therefore, we only address the second step and determine whether the police employed reasonable means and reasonable procedures in taking appellant's blood.

8

This second part of the analysis contains two discrete questions. First, in determining whether police employed reasonable "means," we must decide whether the chosen test was reasonable. *Johnston*, 336 S.W.3d at 658. Second, in determining whether police employed a reasonable "procedure," we must decide whether the test was performed in a reasonable manner. *Id*.

### 1.       Reasonableness of Chosen Test

For the general population, the Supreme Court has determined that a blood test is a reasonable means from which to analyze an individual's blood alcohol level. *Schmerber*, 384 U.S. at 771; *see also Breithaupt v. Abram*, 352 U.S. 432, 435–36 (1957) (explaining that those entering the military, marrying, or going to college must take blood tests and millions of people voluntarily donate blood, so the blood test procedure has become routine in our everyday life). The court of criminal appeals has also stated directly that "there is a presumption that venipuncture blood-draw tests are reasonable under the Fourth Amendment." *Johnston*, 336 S.W.3d at 659. Some courts may deem blood testing to be unreasonable over another method of testing when "the few who on grounds of fear, concern for health, or religious scruple might prefer some other means of testing." *Schmerber*, 347 S.W.3d at 771. However, the burden falls to the appellant to show that the type of test employed was "not a reasonable means to obtain a blood alcohol assessment as to him or her, individually." *Johnston*, 366 S.W.3d at 660. The record must contain evidence showing that the police chose a test that was not reasonable due to a "verifiable medical condition," or we will presume that the choice to administer the test is reasonable. *Id.*; *see Pacheco v. State*, 347 S.W.3d 849, 854 (Tex. App.—Fort Worth 2011, no pet.).

Appellant argues that the chosen test was unreasonable because no inquiry was made into her preexisting conditions or her status as a "bleeder." But, "the failure to make an inquiry into an individual's medical history before drawing blood and to conduct a follow up examination does not render blood draws per se unreasonable." *Johnston*,

9

366 S.W.3d at 659. Moreover, appellant has not demonstrated that a venipuncture blood draw would be unreasonable if administered to her individually.

The record contains no evidence that appellant suffers from a medical condition that would have made another means of testing preferable. Other than some small hematomas and numbing in her fingers and hand, there is also absent from the record any verifiable evidence that appellant suffered negative medical consequences from the drawing of her blood. A DWI suspect, naturally familiar with her own medical history, is in the best position to identify and disclose any peculiar medical condition that could result in risk, trauma, or more than *de minimis* pain if a blood draw were performed. *Id.* at 662. Appellant cites to no evidence, however, that she apprised the professionals drawing her blood of any existing medical conditions that might make the blood draw unreasonable. Therefore, the presumption stands that the venipuncture blood test chosen here was a reasonable method of measuring appellant's blood alcohol level.

## 2. Reasonableness of Manner of Performance

Addressing the second prong of the reasonableness analysis, appellant argues that the arresting officer and registered nurse did not perform the blood draw in a reasonable manner because physical force was used to restrain her during the procedure. She complains that two male police officers restrained her, causing bilateral wrist pain. The incident led to her transport to a hospital, where doctors prescribed ice packs for her wrist and hands.

It is appropriate to invoke traditional Fourth Amendment principles to determine whether a blood draw was performed in a reasonable manner. *See State v. Hardy*, 963 S.W.2d 516, 524 (Tex. Crim. App. 1997) (recognizing that the Fourth Amendment imposes certain reasonableness requirements as a condition for obtaining blood evidence). Accordingly, the reasonableness of the manner in which a DWI suspect's blood was drawn should be assayed on an objective, case-by-case basis in light of the totality of the circumstances surrounding the draw. *Johnston*, 336 S.W.3d at 661.

Police officers act reasonably when extracting a blood sample if the procedure is carried out in accordance with acceptable medical practices. *Id.* at 663. Here, the procedure was performed by a registered nurse in a freestanding medical facility. Appellant has not identified anything inherently unsafe about the environment in which the procedure took place. Instead, appellant focuses on other circumstances surrounding the blood draw, such as the officers' use of handcuffs and force to physically restrain her.

The record contains audio tapes of the blood draw as it was being performed. Our review of the recordings confirms testimony from the officers and nurse that appellant was combative throughout the procedure. She loudly resisted the blood draw, was verbally abusive, and even used her nails against one of the officers. One officer stated on tape that appellant was being restrained during the procedure to prevent any further injury. Based on these facts, we cannot determine that the State acted unreasonably through its use of force. *Cf. Carmouche v. State*, 10 S.W.3d 323, 329–30 (Tex. Crim. App. 2000) (concluding that an officer was justified in handcuffing suspect out of concern for his own safety). Nor can we determine from appellant's subsequent visit to the hospital that the procedures employed were so unreasonable as to require the exclusion of the blood specimen evidence.

Appellant's third issue is overruled.

## II. Leading Questions

In her second issue, appellant contends that the trial court erred by overruling her objection to leading questions. In particular, appellant complains about the following exchange between the prosecutor and the arresting officer:

STATE: At the time you typed and later executed this evidentiary search warrant for Ms. Franklin's blood, did you believe you had a valid search warrant at the time you executed it?

DEFENSE: Objection -- object to Counsel leading.

COURT: Overruled.

STATE: Let me do it over again. Did you believe you had a valid search warrant at the time you executed the warrant?

11

WITNESS: Yes, I did.

STATE: Is there anything about the warrant that caused you to believe it was invalid?

WITNESS: No.

STATE: Did you believe you had a good and valid warrant?

WITNESS: Yes.

STATE: Did you have a good faith belief that the warrant was issued based on probable cause by a neutral and detached magistrate?

WITNESS: Yes.

A leading question indicates the preferred answer, instructs the witness how to answer, or puts words into the witness's mouth to be echoed back. *See Tinlin v. State*, 983 S.W.2d 65, 70 (Tex. App.—Fort Worth 1998, pet. ref'd). Leading questions posed to a party's own witness are acceptable at the trial court's discretion. *Myers v. State*, 781 S.W.2d 730, 733 (Tex. App.—Fort Worth 1989, pet. ref'd). It is appropriate to ask a leading question of a witness if the question is necessary to develop his testimony. *Wyatt v. State*, 23 S.W.3d 18, 28 (Tex. Crim. App. 2000).

To preserve error on the issue of leading questions, an appellant must present to the trial court a timely objection made as soon as basis for the objection becomes apparent. *See* Tex. R. App. P. 33.1(a); *Mosley v. State*, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998); *see also* Tex. R. Evid. 103(a)(1). If an appellant fails to do this, error is not preserved and the complaint is waived. *Taylor v. State*, 939 S.W.2d 148, 155 (Tex. Crim. App. 1996); *see also Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991) (holding that party is required to continue to object each time inadmissible evidence is offered in order to preserve error).

Here, the record does not indicate that appellant preserved her complaint for our review. Although appellant registered an objection on the record, the prosecutor withdrew her initial question before the witness could answer. After withdrawing this question, the prosecutor rephrased it in essentially the same terms. But appellant did not

object to the newly posed question. Nor did she object to any of the questions that followed. Appellant's failure to reassert any objections to leading questions accordingly waives any error on this issue. *See Myers*, 781 S.W.2d at 733. Appellant's second issue is overruled.

## CONCLUSION

The judgment of the trial court is affirmed.

/s/    Adele Hedges
       Chief Justice

Panel consists of Chief Justice Hedges and Justices Seymore and Brown.

Do Not Publish — Tex. R. App. P. 47.2(b).