# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-02-00764-CR

**Enrico Valdez, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 51ST JUDICIAL DISTRICT
### NO. A-01-0737-S, HONORABLE BARBARA L. WALTHER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Enrico Valdez appeals his conviction of aggravated assault with a deadly weapon after a bench trial. *See* Tex. Pen. Code Ann. § 22.02(a)(2) (West 2003). The district court assessed punishment at seventeen years in prison. In one point of error, appellant challenges the district court's denial of his motion to suppress evidence seized pursuant to a search warrant that he contends was issued without probable cause. Because we find the district court did not abuse its discretion in denying the motion, we affirm the judgment of conviction.

## BACKGROUND

On June 8, 2001, sixteen-year-old Timothy Ruiz and his friend were walking past the Santa Fe Junction Motor Inn in San Angelo when they encountered appellant, an acquaintance, coming out of one of the rooms. Appellant asked the boys to help him carry ice into his motel room.

Once inside the room, appellant asked the boys to roll some marihuana joints. After engaging in a lengthy and angry telephone conversation, appellant taunted the boys with a gun and then shot Ruiz in the head. Ruiz survived but lost most of his vision. Appellant was indicted on a charge of aggravated assault with a deadly weapon.

On August 5, 2002, appellant filed a motion to suppress evidence, challenging the seizure pursuant to a search warrant of a handgun, a shotgun, and ammunition from his home on North Jackson Street in San Angelo. In support of the motion, appellant urged only that the evidence was seized pursuant to a search warrant obtained without probable cause. Appellant did not seek a hearing or ruling before trial.

At trial commencing three days later on August 8, the State sought to introduce items seized pursuant to the search warrant. Appellant's counsel objected on the ground that the items were seized pursuant to a search warrant obtained without sufficient probable cause. After a voir dire examination of the officer who obtained the search warrant, Detective Don Gallion of the San Angelo Police Department, counsel objected further that the affidavit contained "misstatements" or "misrepresentations." The court overruled the objection and denied the motion to suppress, and admitted into evidence the items seized pursuant to the search warrant.

Appellant was convicted of aggravated assault with a deadly weapon, and this appeal ensued.

**DISCUSSION**

Relying on *Franks v. Delaware*, appellant contends in a single issue on appeal that the underlying affidavit for the search warrant contained false statements that were made "either

2

knowingly or intentionally or with reckless disregard for the truth," and the district court therefore erred in denying his motion to suppress and admitting the evidence seized pursuant to the warrant. *See Franks v. Delaware*, 438 U.S. 154 (1978). In his pretrial motion to suppress, appellant sought to suppress all evidence illegally obtained or seized, alleging that the search of his residence was pursuant to an invalid search warrant because the underlying affidavit did not establish probable cause. On appeal, the only ground asserted for the invalidity is that the affidavit contains false statements and, when the statements are stricken, insufficient probable cause remains. But the motion to suppress did not encompass any allegation that the search warrant was obtained by deliberate falsehood or reckless disregard of the truth.

In determining the validity of a search warrant affidavit, the reviewing court considers only the information brought to the issuing magistrate's attention. The reviewing court is thus limited to the four corners of the affidavit. *Jones v. State*, 833 S.W.2d 118, 123 (Tex. Crim. App. 1992). Texas courts generally will not look behind the face of the affidavit to determine the validity of the affidavit and the search warrant based thereon. *Ramsey v. State*, 579 S.W.2d 920, 921 (Tex. Crim. App. 1979); *Carroll v. State*, 911 S.W.2d 210, 218 (Tex. App.—Austin 1995, no pet.). An exception is a proper *Franks* motion.

When a defendant makes a "substantial preliminary showing" that a false statement in the search warrant affidavit was made intentionally, knowingly, or with reckless disregard for the truth, and that the false statement was necessary to the finding of probable cause, the Fourth Amendment requires a hearing at the defendant's request. *Franks*, 438 U.S. at 155-56; *Dancy v. State*, 728 S.W.2d 772, 782 (Tex. Crim. App. 1987). The procedure for invoking a *Franks* hearing

3

was set out in *Dancy*, 728 S.W.2d at 781, and in *Ramsey*, 579 S.W.2d at 922. To be entitled to an evidentiary hearing under *Franks* on the allegations concerning the validity of the affidavit, the defendant must allege deliberate falsehood or reckless disregard for the truth by the affiant, specifically pointing out the portion of the affidavit claimed to be false. Allegations of negligence or innocent mistake are insufficient, and the allegations must be more than conclusory. The defendant must also accompany these allegations with an offer of proof, such as an affidavit or other statement, stating the supporting reasons. The defendant must further demonstrate that when the portion of the affidavit alleged to be false is excised from the affidavit, the remaining content is insufficient to support issuance of the warrant. *See Franks*, 438 U.S. at 171-72; *Ramsey*, 579 S.W.2d at 922-23.

The burden is on the defendant at the hearing to show falsity or reckless disregard for the truth by a preponderance of the evidence. If the defendant meets this burden, the false material in the affidavit will be disregarded. If the affidavit's remaining content is not enough to show probable cause, the search warrant is voided and the fruits of the search excluded. *Dancy*, 728 S.W.2d at 782-83. A misstatement in an affidavit that results from simple negligence or inadvertence as opposed to a deliberate falsehood or reckless disregard for the truth will not render the warrant invalid. *Id.*

Here, appellant did not follow the prescribed procedure. By his motion to suppress, the overruling of which he challenges on appeal, appellant failed to make any preliminary showing that a false statement was included by the affiant officer in the affidavit either knowingly and intentionally or with reckless disregard of the truth. Appellant did not allege in his motion that the

4

affiant made a false statement, nor did he seek a hearing or ruling before trial. *See Franks*, 438 U.S. at 155; *Dancy*, 728 S.W.2d at 781. "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Franks*, 438 U.S. at 171. Because he failed to make any showing, he never brought himself within the purview of the *Franks* rule and was not entitled to a *Franks* hearing. Absent such a showing as would warrant a *Franks* hearing, the reviewing court will not look beyond the four corners of the affidavit. *See Brooks v. State*, 642 S.W.2d 791, 796-97 (Tex. Crim. App. 1982). Even if we assume the issue was properly raised at trial, appellant failed to make the requisite showing.

At trial, witness Shannon Gonzales testified that she and some friends had stayed at appellant's house "on Jackson Street" into the morning of June 8. Because appellant's parents were returning home and "he didn't want us to be there," Gonzales rented the motel room at the Santa Fe Junction Motor Inn where the incident later occurred. She testified that she responded to the detectives' questions, including one concerning appellant's address: "I didn't remember if it was north or south. I might have remembered the address at the time." Appellant's counsel then questioned Detective Gallion about his conversation with Gonzales and the preparation of the affidavit in support of the search warrant:

> Q: Now, you said in your affidavit, you said you spoke with—with whom did you speak in order to get your information about the house?
>
> A: May I refer to my affidavit?
>
> Q. Yes.
>
> A. I spoke with Detective Henshaw, Detective Barrera, and Shannon Gonzales.

Q. And how did you come into contact with Shannon?

A. Through Detective Henshaw.

Q: And where did you speak with her?

A: I actually spoke through Detective Henshaw to her after reading her statement.

Gallion later testified that in addition to speaking with Detective Henshaw, who actually took Gonzales's statement, he also spoke with Gonzales on the telephone.

The State sought to introduce evidence seized from appellant's home over the objection of appellant's counsel. The search warrant affidavit states in relevant part:

> The probable cause for the filing of this complaint is that affiant is a peace officer under the laws of the State of Texas. . . . Affiant has spoken to SAPD Detectives Henshaw and Barrera and Shannon Gonzalez and learned the following: That on June 8, 2001 the Defendant was in a room at the Santa Fe Junction Motor Inn, Room 207, which is located in San Angelo, Tom Green County, Texas. That the shooting victim, Timothy Ruiz, and his friend Andrew Garcia were walking by the Santa Fe Motor Inn and were invited into the above mentioned room by the Defendant. That once inside, Ruiz and Garcia sat at a table and began to roll marijuana cigarettes while the Defendant took a phone call. That when the Defendant finished talking on the phone he returned to the table where Ruiz and Garcia were sitting and appeared to be angry. That the defendant produced a handgun and pointed it, from extremely close range, at Ruiz's head. That the Defendant then pulled the trigger and shot Ruiz in the head, lodging the bullet in the base of Ruiz's skull. That immediately thereafter, Garcia pulled Ruiz out of the room and the victim was taken to the hospital. The Defendant also immediately left the room and fled the scene.
>
> Affiant participated in a search warrant executed at the Santa Fe Junction Motor Inn on the afternoon of June 8, 2001. During the search of the room, no firearm was found. At approximately 2:30 p.m. on today's date, affiant spoke with Shannon Gonzales and she related that the Defendant admitted to her that he shot the victim in the head, stating, "I shot that kid with my gun." Gonzales told affiant that she had been to the Defendant's house and spoke with him. Gonzales told affiant that she noticed blood on the Defendant's shoes when she was talking to him. Gonzales gave affiant the Defendant's home address as 801 N. Jackson.

6

Because Gallion's affidavit avers (i) that "affiant spoke with Shannon Gonzales," and appellant argues that the testimony establishes that only Detective Henshaw spoke with her directly and that Gallion received his information indirectly from Henshaw, and (ii) that Gonzales gave appellant's home address as 801 N. Jackson when she was confused about whether he lived on North or South Jackson and could not remember what she told the detective, appellant argues that the affidavit contained false or misleading statements and the probable cause is therefore insufficient. We disagree.

Even if it can be argued that appellant complied with the requirements of *Franks* and that it is therefore permissible to go behind the four corners of the affidavit, the record before this Court does not show that false statements were intentionally or knowingly made by Detective Gallion or that there was a reckless disregard of the truth. Innocent mistakes or even negligence are not sufficient to support a *Franks* claim. Mere conflicts between investigative notes or witness statements and the actual affidavit will not support a *Franks* claim. Probable cause in the affidavit was based on (i) hearsay information received by Officer Gallion, which he appropriately relied upon, and (ii) Gallion's own investigation. Gallion acknowledged that Gonzales's statements in the affidavit were made to Henshaw and not to him even though he also spoke with Gonzales by telephone. He also testified that the correct address was confirmed through investigative records of prior dealings with appellant. Gallion was not further questioned as to other circumstances of the preparation and execution of the affidavit. He was never asked whether the statement in the affidavit that the "affiant spoke with Gonzales" was a knowing or intentional misrepresentation, was a false

statement, or was made in disregard of the truth. Gallion testified that he prepared the affidavit at the direction of the assistant district attorney before presenting it to the judge.

Even if it can be argued that these statements were overstatements or inaccurate summaries of information, the statements were not shown to be deliberately false. Gallion accumulated information for the affidavit, some of which was hearsay. Gonzales's witness statement, which was not in evidence, evidently confused directions on Jackson Street. In any event, Gonzales testified at trial that she had been at appellant's house the night before the shooting and simply could not recollect the precision with which she recounted the address to the officers. That the detective used other investigatory tools to confirm the address he received from a witness is simply prudent police work. If any of the information was contradictory, at most it raised a fact issue for the trial judge to resolve, which she resolved against him. *See Hinojosa v. State*, 4 S.W.3d 240, 247 (Tex. Crim. App. 1999). Moreover, even if the statements were false and therefore stricken from the face of the affidavit, the remaining content would still reflect ample probable cause sufficient to support the issuance of the search warrant. Appellant neither alleged nor proved that he was entitled to any relief under *Franks*.

**CONCLUSION**

Appellant did not make the preliminary showing of deliberate falsehood or reckless disregard of the truth required by *Franks*. Because appellant failed to raise a *Franks* claim before or at the time of trial, the district court was not given an opportunity to rule on the contention and nothing is presented for review. If presented, the contention is without merit. Because we do not

8

find that the district court abused its discretion in overruling the motion to suppress, we affirm the judgment of conviction.

_____

Jan P. Patterson, Justice

Before Justices Kidd, B. A. Smith and Patterson

Affirmed

Filed:   June 19, 2003

Do Not Publish