# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-12-00793-CR

Michael Lee Elliott, Jr., Appellant

v.

The State of Texas, Appellee

FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT
NO. 40147, HONORABLE GUILFORD L. JONES III, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found Michael Lee Elliott, Jr. guilty of possession with intent to manufacture methamphetamine and assessed punishment at fifty years' imprisonment. In his sole issue on appeal, Elliott challenges the trial court's denial of his pretrial motion to suppress evidence. We will affirm.

## BACKGROUND

This appeal centers around the April 14, 2011 search and seizure of items from a residence in Spicewood, Texas where Appellant was allowed to stay while his father was away on military active duty. Appellant filed a pretrial motion to suppress evidence obtained pursuant to the warrant authorizing the search, alleging that the affidavit in support of the search warrant was insufficient to demonstrate probable cause to search the residence. The trial court held an evidentiary hearing on the motion and heard testimony from Officer Rickye Feist of the Texas Department of Public Safety, who swore the affidavit in support of the warrant. Officer Feist

testified that he received the information in the affidavit from Deputy Jeff White and Investigator Noland Hicks, both from the Burnet County Special Operations Unit. Deputy White relayed to Officer Feist that he went to investigate the residence after he received information from a residential security officer who observed unusual traffic. Deputy White observed two vehicles at the residence and verified that one vehicle was registered to Appellant. Deputy White then spoke with the security officer, who relayed additional information about a witness[1] who provided more detail about the suspicious activity at the residence. Deputy White contacted the witness who said that the persons staying at the residence were "Michael" and "Andy" and that they had been staying at the location for an unspecified amount of time. "Michael" was later identified as Appellant, and "Andy" was later identified as Andrea Thiemann. The witness told Deputy White that both Michael and Andy lived in the San Antonio area and came to the Spicewood residence for short stays. Deputy White confirmed by computer records that both had residences in the San Antonio area.

The witness also told Deputy White that Appellant and Thiemann were purchasing chemical precursors in San Antonio and bringing them to the Spicewood residence to manufacture methamphetamine. Deputy White followed up on this information by conducting inquiries through H-E-B in San Antonio, confirming that Appellant purchased significant amounts of pseudoephedrine at its grocery store in January, February, March, and April of 2011. Likewise, Deputy White confirmed through Wal-Mart that Appellant purchased significant quantities of pseudoephedrine at its store in those same months. The witness further informed Deputy White that

---

[1] The State refers to this person as a "concerned citizen" and Appellant refers to this person as an "informant." The record reflects that this person is a Spicewood resident but does not provide further detail about his or her identity. We will refer to this individual as "the witness."

2

Appellant was manufacturing methamphetamine at the Spicewood residence and then transporting it back to the San Antonio area. The witness also informed Deputy White that Appellant would deliver the methamphetamine to a Charles Smith in Spicewood, Texas, and that Smith then would deliver the methamphetamine to local users for Appellant. Deputy White later verified that Smith lived in Spicewood and that Smith had a criminal history of possession of controlled substances. Deputy White also confirmed that Appellant had a criminal history of several arrests for drug violations and for manufacturing a controlled substance.

Officer Feist's probable-cause affidavit noted that he had received information from a second unnamed source concerning Smith. The second source reported that Smith was manufacturing and distributing methamphetamine in the Spicewood, Texas area with an unknown white male and female. The second source overheard Smith bragging about how the unknown male brings the pseudoephedrine from San Antonio and manufactures the methamphetamine in Spicewood.

Investigator Hicks also provided information to Officer Feist that, on April 13, 2011, the day before the issuance of the warrant, Hicks and Deputy White began surveillance of the Spicewood residence frequented by Appellant. On arrival, Investigator Hicks and Deputy White saw a vehicle parked behind the residence near the back door. They later witnessed that same vehicle leave the residence occupied by two white males. With the aid of two other investigators from the Burnet County Special Operations Unit, Investigator Hicks and Deputy White observed the vehicle travel from the residence to the Spicewood General Store and then continue to the Wal-Mart in Marble Falls. Investigator Hicks saw the two white males purchase three bottles of peroxide at Wal-Mart. From Wal-Mart the vehicle traveled to the H-E-B in Marble Falls where Deputy White

and one of the additional investigators observed the two males exit with coffee filters. Investigator Hicks, Deputy White, and the other two investigators then observed the vehicle return to the residence in question and watched the two white males enter it. The two white males were later identified as Appellant and James Foxworth.

Investigators saw the vehicle leave the residence again later that day. Deputy White subsequently stopped the vehicle for a traffic violation during which he identified the occupants as Appellant, James Foxworth, and Andrea Thiemann. After the occupants gave consent, officers discovered materials known to be used in the production of methamphetamine, such as a gallon of Coleman camp fuel, two one-ounce bottles of tincture of iodine, one .75 ounce bottle of Phenol Red, an empty box of pseudoephedrine from H-E-B, a receipt from an Austin Wal-Mart dated 04/13/2011 showing a purchase of pseudoephedrine, and a receipt from the Marble Falls Wal-Mart dated 04/13/2011 showing a purchase of three bottles of peroxide. Investigators also found a clear plastic bag containing pH strips and one bottle of tincture of iodine in Appellant's pocket. During the search of the vehicle a syringe was found in a backpack that belonged to Appellant. Investigator Hicks spoke with Appellant and noticed "track" marks on both of Appellant's arms. Appellant admitted to Investigator Hicks that he had used the syringe to inject himself with methamphetamine within the past 48 hours.

On April 14, 2011, the day after obtaining evidence of materials used in the manufacture of methamphetamine from the vehicle, Investigator Hicks and Deputy White contacted Officer Feist to draft an affidavit in support of a warrant to search the residence. The affidavit included the aforementioned facts that Investigator Hicks and Deputy White related to Officer Feist as well as Officer Feist's own knowledge about the process of manufacturing methamphetamine

4

and how the items obtained in the vehicle search are used in that process. The affidavit also contained a summary of Appellant's criminal record and concluded by summarizing the affiant's experience with narcotics traffickers tending to keep records with respect to illegal sales and manufacturing of narcotics. The search warrant was issued and executed on April 14, 2011, the same day the affidavit was sworn. Upon searching the residence, the investigators found precursor chemicals used in the manufacture of methamphetamine.

After hearing the above-described evidence and arguments of counsel, the trial court made a record denying Appellant's motion to suppress evidence relating to materials found in the residence. Following his conviction by a jury, Appellant filed this appeal challenging the trial court's denial of his motion to suppress.

## DISCUSSION

### Standard of review

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). A trial court abuses its discretion when its ruling is arbitrary or unreasonable. *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). The court's ruling on a motion to suppress will be upheld if it is reasonably supported by the record and is correct under any applicable legal theory. *Id.*

We apply a bifurcated standard of review on motions to suppress, giving almost total deference to a trial court's determination of historical facts and reviewing de novo the trial court's application of the law. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002) (citing *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997)). However, when assessing the

5

sufficiency of an affidavit for a search warrant, as here, we are limited to considering information in the four corners of the affidavit. *Jones v. State*, 833 S.W.2d 118, 123 (Tex. Crim. App. 1992). When we review the magistrate's decision to issue a warrant, we apply a highly deferential standard to the magistrate's decision because of the constitutional preference for searches to be conducted pursuant to a warrant as opposed to a warrantless search. *Swearingen v. State*, 143 S.W.3d 808, 810-11 (Tex. Crim. App. 2004) (citing *Illinois v. Gates*, 462 U.S. 213, 234-37 (1983)). As long as the issuing magistrate had a substantial basis for concluding that probable cause existed, we will uphold that magistrate's probable-cause determination. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011). Reviewing courts should not invalidate a warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. *Id.* at 272. When in doubt, the appellate court should defer to all reasonable inferences that the magistrate could have made. *Id.*

When reviewing a probable-cause determination, the issue is not whether there are other facts that could have, or even should have, been included in the affidavit; we focus on the combined logical force of facts that are contained within the four corners of the affidavit, not those that are omitted from it. *Rodriguez v. State*, 232 S.W.3d 55, 62 (Tex. Crim. App. 2007). The only issue is whether the facts that actually were in the affidavit, combined with all reasonable inferences that might flow from those facts, are sufficient to establish probable cause. *Id.* at 64.

**The affidavit was sufficient to establish probable cause**

Applying that standard here, we conclude that the affidavit in support of the search warrant was sufficient to establish probable cause. Given the totality of the circumstances shown within the four corners of the affidavit, the magistrate was capable of making a practical and

6

common-sense decision that probable cause existed to believe that contraband and/or evidence of a crime would be found in Appellant's residence. *Rodriguez*, 232 S.W.3d at 62; *see also Gates*, 462 U.S. at 238.

Both the federal and Texas constitutions and Texas statutory law provide that a magistrate shall not issue a search warrant without first finding probable cause that a particular item will be found in a particular location. *Rodriguez*, 232 S.W.3d at 60; U.S. Const. amend. IV; Tex. Const. art. I, § 9; Tex. Code Crim. Proc. art. 1.06. Thus, a search warrant properly issues only when predicated upon probable cause. *See State v. Ross*, 32 S.W.3d 853, 857 (Tex. Crim. App. 2000). The determination of whether probable cause for a search warrant exists is made by considering the totality of the circumstances set forth in the affidavit to arrive at a practical, common-sense decision as to whether there is a fair probability that contraband or evidence will be found in a particular place. *Gates*, 462 U.S. at 238. It is a flexible and non-demanding standard. *Id.* In addition to the constitutional requirement of probable cause, the Code of Criminal Procedure provides that a sworn affidavit must set forth the following sufficient facts: (1) that a specific offense has been committed; (2) that the specifically described property or items that are to be searched for or seized constitute evidence of that offense or evidence that a particular person committed the offense; and (3) that the property or items constituting evidence to be searched for or seized are located at or on the particular person, place, or thing to be searched. Tex. Code. Crim. Proc. art. 18.01(c). To meet these requirements, the affidavit must establish a nexus between the place to be searched and evidence of a crime. *See Bonds v. State*, 403 S.W.3d 867, 874 (Tex. Crim. App. 2013).

Here, the facts known to Investigator Hicks and Deputy White at the time of entry into the residence in question included: (1) the tip from the witness that Appellant and Thiemann were purchasing precursor chemicals in San Antonio and then bringing the chemicals to the Spicewood residence; (2) the confirmed purchases Appellant made of various amounts of pseudoephedrine in prior months; (3) the information from the witness that Appellant was supplying methamphetamine to Charles Smith, who has a confirmed history of possession of a controlled substance; (4) the information from a second source that Smith was manufacturing and distributing methamphetamine in the Spicewood area with a white male who would bring pseudoephedrine from San Antonio and manufacture it in Spicewood; (5) the knowledge gained through surveillance of the residence, including witnessing Appellant and Foxworth's departure from the residence to Wal-Mart and H-E-B and their return with three bottles of peroxide and coffee filters; (6) the evidence found in the vehicle after being stopped for a traffic violation; (7) the evidence found in Appellant's pocket and backpack; (8) Appellant's admission that he had injected himself with methamphetamine in the past 48 hours; and (9) Appellant's confirmed criminal history of involvement with methamphetamine production.

Appellant relies heavily on the language in *State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012), stating that, "Probable cause exists when, under the totality of the circumstances, there is a 'fair probability' that contraband or evidence of the crime will be *found at a specified location*." *Id*. (emphasis added). Based on *Duarte*, Appellant argues that the affidavit provides insufficient facts to support a substantial basis for concluding that the makings of

methamphetamine was within the residence in question.[2] However, Appellant misconstrues the applicable standard. The test is whether a reasonable reading by the magistrate would lead to the conclusion that the affidavit provided a substantial basis for the issuance of the warrant. *Rodriguez*, 232 S.W.3d at 60. Thus, the magistrate's sole concern should be the probability that evidence of a particular crime will likely be found at a given location and not whether the specified location was narrowly described. *See id*. at 62. Further, unlike the affidavit challenged in *Duarte* which contained nothing to suggest that the defendant was engaged in ongoing criminal activity at a particular address, the affidavit here alleged that Elliott was manufacturing methamphetamine at the residence. *Cf. Duarte*, 389 S.W.3d at 360.

Appellant argues that the supporting affidavit fails to state sufficient facts upon which the issuing magistrate could find probable cause. Specifically, he contends that there is nothing in the affidavit that provides a substantial basis for concluding that the residence in question contained the substance that the warrant authorized the officers to search for, that being methamphetamine. However, although the witness did not attest to personally seeing Appellant manufacture methamphetamine at the residence, that evidence was not the only information relied on by the magistrate. *See Gates*, 462 U.S. at 238; *see also Polanco v. State*, 475 S.W.2d 763, 766-67 (Tex. Crim. App. 1971) (affidavit did not show that unnamed informer personally observed or had personal knowledge of heroin transactions he reported but information from his tip was corroborated

---

[2] In *Duarte*, a cocaine-possession case, the court inquired whether the cocaine at a residence was located in an attic or on a kitchen table but those questions went to the reliability of the tip. *Duarte v. State*, 389 S.W.3d 349, 359 (Tex. Crim. App. 2012). Further, the court distinguished tips about cocaine possession from those in which the tip supports an inference that criminal activity is ongoing. *Id*.

with facts from police surveillance set forth in affidavit and supported probable cause). The witness relayed information that Appellant and Thiemann were purchasing chemical precursors in San Antonio and bringing them to the Spicewood residence to manufacture methamphetamine, which was corroborated by Deputy White's background check confirming that Appellant and Thiemann both have San Antonio residences and that Appellant had purchased various amounts of pseudoephedrine, a component of methamphetamine. The witness's information that Appellant supplies the manufactured methamphetamine to Charles Smith was corroborated by Deputy White's report that Smith lives at the residence mentioned by the witness and that Smith has a criminal history of possession of controlled substances. Also, Investigator Hicks and Deputy White conducted a surveillance of the Spicewood residence frequented by Appellant, which allowed them to witness Appellant's behavior and later to witness his suspect purchases.

Furthermore, the record reflects and neither party disputes that on April 13, 2011, Appellant, along with another male individual later identified as Foxworth, left the residence and went to Wal-Mart where they purchased three bottles of peroxide and then to H-E-B where they left with coffee filters. According to Officer Feist's testimony, coffee filters and peroxide are both used in the manufacture of methamphetamine. Later that day, the vehicle left the residence and was stopped for a traffic violation. During the stop, investigators found in the vehicle more items that Officer Feist subsequently testified to be known necessary components to the manufacture of methamphetamine. The peroxide was not in the vehicle later that day, thus the magistrate could reasonably infer that the peroxide and coffee filters were taken into the house. The connection between the evidence found in the vehicle and the missing items that had been recently purchased further supports the magistrate's decision to issue the search warrant.

Based solely on the affidavit's four corners, we hold that the magistrate had a substantial basis for concluding, either directly or through reasonable inference, that probable cause existed to search the residence in question as described in the affidavit and warrant. *See Gates*, 462 U.S. at 238; *Rodriguez*, 232 S.W.3d at 62; *Jones*, 833 S.W.2d at 123. The totality of information included in the probable-cause affidavit would allow a magistrate to reasonably conclude that contraband would be located at the residence. *Rodriguez*, 232 S.W.3d at 62; *see Gates*, 462 U.S. at 238. The affidavit established a sufficient nexus between criminal activity, the things to be seized, and the place to be searched. *See Bonds*, 403 S.W.3d at 874. Therefore, probable cause existed to search Appellant's residence.

## CONCLUSION

We overrule Appellant's sole issue on appeal and affirm the trial court's denial of the motion to suppress evidence.

_____

Jeff Rose, Justice

Before Justices Puryear, Rose, and Goodwin

Affirmed

Filed:　July 2, 2014

Do Not Publish

11